## In re DIVERSEY BLDG. CORPORATION.

### WALLACH et al. v. DIVERSEY BLDG. CORPORATION.

### No. 6149.

Circuit Court of Appeals, Seventh Circuit.

June 30, 1937.

Joseph H. Schwartz, Edward A. Cooper, and Samuel S. Siegel, all of Chicago, Ill., for appellants.

Arthur Abraham, of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This appeal involves the validity of a decree of the District Court, sitting in bankruptcy, holding appellants, as lessees of appellee, in default on account of nonpayment of rent under their lease. The controversy arose over the construction of a lease which provided for a minimum rental plus a percentage of the gross rentals over a certain amount, and appellants' failure to include in the monthly report called for by the lease, the value of seven apartments occupied by employees without charge to such employees. The decree awarded recovery in the sum of $4,916.44 and execution was ordered. It was further ordered that appellants pay that amount within ten days from the entry of the order, and in default thereof that they immediately surrender possession of the leased property. The decree further reserved jurisdiction of the parties and subject matter for the purpose of enforcing the order by such other and further proceedings in the premises as might be necessary and appropriate. From that decree this appeal is prosecuted.

The facts out of which this controversy arose, and upon which the referee based his conclusions, are found in a stipulation which in substance is as follows: All objections as to the jurisdiction of the court were reserved. On September 2, 1932, the Diversey Building Corporation entered into a written lease with Leo Wallach for the Diversey Arms Apartment Hotel, in Chicago, excepting all shops and stores on the main floor. Thereafter the lease was assigned by Wallach to the Six Forty-Four Diversey Parkway Corporation with the consent of the lessor. In June, 1934, the creditors of the lessor filed in the District Court a petition for the reorganization of the lessor under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. On April 20, 1935, the court approved a plan, and on June 28, 1935, entered its final decree.

Wallach, and subsequently his assignee, had been in possession of the premises under the lease since September 2, 1932. During that time there were furnished to the lessor, monthly statements showing the gross income derived from the operation of the hotel, which statements did not reflect any money received from apartments occupied by employees, but they did show all other data covering the amounts which appellee would be entitled to receive under the lease. Appellee received those statements and the amounts required to be paid in accordance therewith, and at no time raised any objections as to the statements or the amounts therein shown to be due. Appellee was permitted at all times to examine appellants' books and records for the purpose of verification, and it did so from time to time, but at no time raised any objection thereto until July 6, 1935.

From September 2, 1932, to the date of the stipulation, various apartments in the hotel were occupied by appellants' employees, including the manager, engineer, telephone operator, housekeeper and seamstress, who paid no rentals therefor. Appellants' records truly reflected the number of apartments so occupied and those

records were at all times available for appellee's unrestricted and unlimited inspection. No money was received by appellants for such use and occupation and none was reflected in the monthly statements. An average of seven apartments were thus occupied during the time referred to, and the fair rental value of each to guests of the hotel in the ordinary course of business was $35 a month. At all times there were vacant apartments in the hotel and no prospective guests were refused accommodations for lack of available apartments.

The lease was attached to the stipulation and the substance of certain portions of it which the referee considered pertinent is shown in the margin.[1]

The final decree approving the plan of reorganization of appellee was entered June 28, 1935. Among other things it contained the following:

The debtor shall assume and perform all executory contracts and leases outstanding heretofore entered into by the debtor, or by the trustees herein.

For the determination of all matters germane to this proceeding not heretofore or hereby determined, the debtor herein or any other party in interest may apply to this court for further instructions and directions with respect to any of the matters covered in the order of confirmation heretofore entered, or by this order, or by the plan.

The court hereby reserves jurisdiction to hear and determine the subject matter of any application with respect to all other matters which may arise in the execution of said order of confirmation, or in this order, or in the consummation or carrying out of the plan of reorganization.

On July 6, 1935, appellee, as the debtor under the reorganization proceedings, filed the petition here in controversy in the court in which that proceeding was had, alleging

---

[1] (1) Lessee agreed to pay as rental the total sum of $95,700 in monthly installments of $1,650 each, on the first of each month, commencing on November 1, 1932, and, in addition, to pay certain additional sums as hereinafter shown.

(2) In addition to the monthly rental provided as aforesaid, lessee agreed to pay the lessor fifty per cent. of the net monthly profits derived by the lessor from the operation of the hotel, such payments to be made on the fifteenth day of the month succeeding the month in which the profits were earned, and, for the purpose of evidencing the amounts of such profits, lessee agreed, on or before the fifth day of each month, and within five days after the termination of the lease, to deliver to the lessor a written verified statement of the gross income derived from the operation of said hotel business and the total cost of the operation of said business, and thereupon fifty per cent. of the net profits from the operation of said hotel business, as shown by such statement, should be paid by the lessee to the lessor on or before the fifteenth day of such month; in arriving at the net profits of the operation of said business, all income of whatever kind or character derived from the operation of said hotel should be included and said lessee should be permitted to charge the gross sum of $3,000 for the monthly operating expense of said hotel for the month covered by such statement, exclusive of the sum of $1,650 paid as aforesaid "as the minimum rental under this lease"; lessor was given the right and privilege, during regular business hours, from time to time, to examine the books and records of the lessee for the purpose of verifying the figures as given in the aforesaid statements, and "if any statement so rendered is not objected to within thirty days after rendition the same shall be construed as correct and binding upon the parties hereto."

The lease further provided that an adjustment should be made at the end of each six months of its term, that is to say, on the first day of March and September of each year "to the end that the division of the net profits, over the sums allowed for expense, and the minimum rental to be paid to the lessor * * * shall be on the basis of the profits earned for such six months periods."

(3) The lease further provided that the lessee, simultaneously with its execution, paid over to the lessor the sum of $1,650 in cash which was to be held by the lessor as security for the performance by the lessee of all the terms, conditions and covenants of said lease and which sum should be applied in payment of the rent for the month of August 1937 in the event the lessee had, during the term of said lease, performed all of the requirements of said lease, and in the event of the failure of the lessee to fully, promptly and faithfully comply with all of said terms, conditions and obligations of said lease, then the said sum of $1,650 should be retained by the lessor as liquidated damages for the damages sustained and to be sustained because of said breach by said lessee.

the pendency of that proceeding by virtue of the continuing order of jurisdiction in its final decree. It further alleged, among other things, which are not here pertinent, that the lessees did not correctly set forth a true statement of the financial operation of the premises in that they did not include in their reports the income of rental of the apartments occupied by appellants' employees, of which one-half was due and owing to appellee. It therefore prayed that appellants be ordered and directed to answer the petition at an early date, and to show cause why they should not deposit with the clerk of the court the sum of $7,626.71, or in default thereof to forthwith surrender possession of the premises, and for such other and further orders as the court might deem just and proper.

On July 16, 1935, appellants, answering the order to show cause, filed their joint and several answers, in which they denied certain allegations, alleged lack of knowledge as to same, and admitted others not specifically including jurisdiction. However, they did generally deny each allegation not admitted, or not specifically denied. They set forth the lease as an exhibit and alleged other matters, all of which might properly be considered as supporting a defense on the merits, as well as a basis for urging lack of jurisdiction. On July 17, 1935, appellee's petition was referred to a referee.

On August 19, 1935, before other steps had been taken by either of the parties, appellants filed their supplemental joint and several answers, in which they specifically denied the court's jurisdiction over the issues presented by the petition, on the ground that a remedy at law was available to appellee to which appellants were as a matter of right entitled. They further alleged that that court had lost jurisdiction of the issues there presented, when it entered its final decree approving the plan of reorganization. Hence, they moved the court to dismiss both the petition and the rule to show cause.

On September 16, 1935, appellants, by leave of court, filed their amended joint and several answers in which they specifically denied the jurisdiction of the court; first, because the court had relinquished all jurisdiction when it entered its final decree in approval of the plan of reorganization, and second, because the issues raised in this action were not subject to the summary jurisdiction of that court, but could only be tried in a plenary action.

On October 16, 1935, appellee filed an additional petition herein, alleging subsequent accumulated past due rentals, and misuse of the premises in violation of the terms of the lease. As to rentals they made the same prayer as in the original petition, and further asked that appellants be ordered to show cause at an early date why the lease should not be cancelled for misuse of the property. Appellants then answered by denial and further asked that their amended joint and several answers to the original petition stand as their answers to the last petition, and they were all referred to the same referee. The hearing before the referee began January 18, 1936, and was concluded on June 22, 1936. His report was filed November 6, 1936.

Upon these facts the referee concluded:

(1) That the court had jurisdiction of the subject matter and of the parties involved.

(2) That the appellants submitted to the jurisdiction of the court by filing answers and proceeding to trial without raising the question of jurisdiction or the question whether the present issue could or should be heard in this summary proceeding or in a plenary proceeding elsewhere; that the raising of such questions for the first time in the amended joint and several answers of said respondents came too late.

(3) That the court, in the decree approving and confirming the plan, retained jurisdiction over the subject matter of the present proceeding.

(4) That the appellants were indebted to the debtor corporation in the sum of $7,626.71 for excess income over and above the amount reported to the debtor by said appellants, and also for the amounts of $998.98 for the six-month period ending August 31, 1935, and $251.39 for the month of September, 1935, and corresponding amounts for the value of the use and occupancy of any apartments in the hotel by employees of the appellants since the month of September, 1935.

Over appellants' objections, to which exceptions were properly reserved, the court confirmed the report without memorandum opinion. Subsequently, however, the decree ordered a recovery of $4,916.44,

which the parties agreed was the correct amount in case there was liability.

We are compelled to reverse this decree on the merits, and ordinarily it would be unnecessary to pass upon the preliminary questions presented. However, confusion has arisen with respect to jurisdiction in which a decision of the Supreme Court and two decisions of this court are involved, and on this account we feel that this question should be considered.

█ The referee's conclusion that jurisdiction was waived, which was concurred in by the court, was apparently based upon the ruling in Fairbanks Steam Shovel Company v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841, affirming a decision of this court In re Federal Contracting Co., 212 F. 688. The question there raised was purely one of venue. It was not set up by way of answer, and was raised for the first time, orally, in this court. The Supreme Court ruled that this court correctly held that the appellant, by answering and making defense upon the merits, consented to the jurisdiction (that is to say the venue).

We think this question of jurisdiction before us is controlled by the ruling in Louisville Trust Company v. Comingor, 184 U.S. 18, 22 S.Ct. 293, 296, 46 L.Ed. 413. This case was called to appellee's attention, but it has failed to refer to it. The facts there are quite analogous to those here presented, and the court said: "In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it finds that it cannot go farther. * * * We are of opinion that even if Comingor could have consented to be pursued in this manner, he did not so consent. He was ruled to show cause, and the cause he showed defeated jurisdiction over the subject matter, that is jurisdiction to proceed summarily. He did not come in voluntarily, but in obedience to peremptory orders, and although he participated in the proceedings before the referee, he had pleaded his claims in the outset, and he made his formal protest to the exercise of jurisdiction before the final order was entered. He had been restrained from settling his accounts in the state court in the action pending there, and the District Court, instead of dissolving the injunction, declining jurisdiction, and leaving the litigation to the state court, either in due course, or by plenary suit, adjudicated the merits and entered a peremptory order that he should pay over, disobedience of which order was punishable by commitment. We think that in this there was error, and that the Circuit Court of Appeals was right in its decree of reversal." See also In re Bergstrom (Bergstrom v. Zibell) (C.C.A.7) 1 F.(2d) 288.

It is true that in the amended answer appellants' prayer was in the alternative, that the cause should be dismissed for want of jurisdiction, or in the alternative that the petition be denied for want of merit. It must be remembered, however, that the same facts constituted the basis for both prayers, and that they pleaded them under a peremptory order of the court which on its face required them to plead to the merits. They therefore offered them as a meritorious defense in case the court ruled against them on the question of jurisdiction. Under these circumstances we think it should not be said that they intended to waive jurisdiction.

In what we have said we have laid aside the question of existing jurisdiction by reason of the applicable statutes claimed by appellee to have been occasioned by appellants' attornment. Due to our conclusions with respect to the merits, it is not necessary to pass on this question.

█ The referee reported that all the material evidence considered was contained in the stipulations. From these it is disclosed that monthy reports were promptly made as contemplated by the lease and submitted to appellee, and that no objection was made to any of them by appellee within thirty days of the time they were received; that at all times the lessor, or appellee, had full opportunity to examine the books and the building and exercised that right many times, and had knowledge, or by the exercise of ordinary care could have had knowledge, that appellants' employees were occupying the seven apartments without paying rent therefor, and that appellants had never accounted for such rentals in their reports. Under such circumstances we are unable to conceive why the parties should not be considered as having construed the contract for themselves. In any event, with full knowledge of the facts, and making no objections to the reports within thirty days, as provided by the lease, we know of no reason why appellee at this late date, in violation of

the lease, should be permitted to question the reports in this respect, or to construe the contract differently from that construction which the parties had previously placed upon it. It is quite true, with respect to income tax, the government in certain instances has charged a taxpayer as a part of his income a reasonable rental value of property which he occupies rent free, but in those instances there was no contract involved. Here there was no preference of creditors claimed or proved; and while it was averred that there was a fraudulent concealment of rentals, there was no proof to support it, and the stipulation precludes a contrary conclusion, for it admits full knowledge, or its equivalent, of all the facts by all the parties.

The decree is reversed with instructions to dismiss the petition for want of equity.