### In re ARGYLE–LAKE SHORE CORPORATION.

### FULLER et al. v. MOSES et al.

### Nos. 6653, 6654.

Circuit Court of Appeals, Seventh Circuit.

June 21, 1938.

Thomas Dodd Healy, of Chicago, Ill., for appellants.

Claude A. Roth, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

The same questions are presented in each of the two appeals which have been consolidated for briefing and for decision by this court.

The controversy in the instant case is an outgrowth of reorganization under Section 77B, 11 U.S.C.A. § 207, in which proceeding a plan of reorganization was submitted, and was approved by the District Court on February 13, 1936. The plan provided for the deposit and cancellation of the first mortgage bonds, the formation of a new corporation and the issuance of the stock of the new corporation to voting trustees. Also, as a part of the plan, participating trust certificates were issued to the bondholders on the basis of one certificate for each "one hundred dollars in face amount of unsubordinated first mortgage bonds."

A voting trust agreement was approved by order of the District Court and a final decree was entered by the court on August 29, 1936, terminating and closing the reorganization proceedings; the decree reciting that the final plan had been consum-

mated. The decree of the court also recited " * * * that except as hereinabove in paragraph 4 and 6 hereof provided, the proceedings in this cause entitled 'In the Matter of Argyle-Lake Shore Building Corporation, a Corporation, Debtor, Case No. 57393,' be and the same hereby are terminated and finally closed."

The voting trust agreement requires the voting trustees to call a meeting of all holders of participating certificates, or to conduct a referendum of the holders on the question of continuance or termination of the trust, such meeting or referendum to be held within sixty days before July 1, 1938. And it further provided that in the event a majority in amount of the holders of participating certificates voting shall vote in favor of the termination of the trust, the trust shall be dissolved as of July 1, 1938. There is a similar provision for an expression of opinion by the holders of the certificates at the end of each two year period during the continuation of the trust. The voting trust agreement expressly authorizes any certificate holder to take "any action and/or give or make any direction, consent, or dissent hereunder by agent, and attorney thereunto duly authorized in writing."

The respondents, who are the owners and holders of over 22% of the participating certificates, favor the dissolution of the voting trust and for the purpose of bringing about such result have communicated with other participating certificate holders and have solicited proxies to vote for the termination of the trust.

The voting trustees presented their verified petition to the District Court in the original bankruptcy case, in which petition they alleged that the respondents were misleading other certificate holders; and for relief the petitioners prayed that the District Court enjoin the respondents from soliciting or voting proxies. And after a hearing the District Court enjoined the respondents from voting any powers of attorney or proxies which had been obtained, or which might thereafter be obtained, as a result of the communications which had been sent out by the respondents; and the respondents were enjoined from sending out further communications "without submitting the form of the proposed communication to the court for its approval." From this order the respondents have prosecuted this appeal.

The argument of appellants-respondents resolves itself into three propositions:

1. The District Court, acting as a bankruptcy court in the original cause, does not possess the injunctive power which was exercised in this case.

2. No such power was reserved in the final decree of August 29, 1936.

3. Granting that the District Court possessed the power, either as a bankruptcy court or under its reservation of power, the petition and supporting evidence did not warrant the issuance of the injunction.

The District Court having terminated and finally closed the proceedings under Section 77B,[1] except as provided in paragraphs 4 and 6 of the final decree, we are of the opinion that the exercise of injunctive power in the instant case cannot rest upon the general equity powers of a bankruptcy court; and that such exercise was invalid unless it falls within the reservation of jurisdiction in paragraphs 4 and 6 of the final decree.[2]

By the terms of paragraph 4 the court reserved jurisdiction for the purpose of adjudicating disputes concerning the ownership of certain bonds and coupons bearing date of November 1, 1922, and for the

[1] "11. That the said plan of reorganization has been consummated and is and has been in full force and effect since February 13, 1936; that the Debtor, Argyle-Lake Shore Building Corporation, is hereby discharged, dismissed and released from this court and these proceedings under Section 77B of the United States Bankruptcy Act, as Amended, and that except as hereinabove in paragraph 4 and 6 hereof provided, the proceedings in this cause entitled 'In the Matter of Argyle-Lake Shore Building Corporation, a Corporation, Debtor, Case No. 57393' be and the same hereby are terminated and finally closed." (final decree).

[2] "4. That American National Bank and Trust Company of Chicago shall exchange said participating certificates for the said bonds dated November 1, 1922, in accordance with the orders entered herein and the court reserves jurisdiction for the purpose of adjudicating all disputes concerning the ownership of said bonds and coupons dated November 1, 1922, and the distribution of said participating certificates representing the

purpose of adjudicating disputes concerning the distribution of participating certificates representing the stock of the newly organized corporation. Clearly, nothing in the foregoing reservation can be construed to include the question involved in the instant proceeding. The reservation in paragraph 6 limits the retained jurisdiction to the persons of the trustees and only for the purpose of considering and acting on any matters concerning the sale of the property or stock held by the trustees, "or other questions which may be referred to the court by said trustees, *in accordance with the specific provisions of the said trust agreement.*" (Our italics.) The present controversy does not involve the sale of property or stock held by the trustee, and the "other questions which may be referred to the court by the trustees" are limited to questions which are referable in accordance with the specific provisions of said trust agreement. An examination of the trust agreement discloses several "specific provisions" which authorize the reference of specific matters to the court by the trustees; but in none of these specific provisions is found any language which would authorize the reference to the District Court of the present controversy, which presents a question for the decision of the certificate holders.

The foregoing conclusion is strengthened by express provisions of the trust agreement respecting the termination of the trust agreement, which are as follows: "The Trust Agreement may be terminated prior to July 1, 1946, (a) by the resolution of two (2) of the Trustees subject to the approval of the District Court of the United States for the Northern District of Illinois, Eastern Division, or (b) by the vote of a majority in amount of the holders of Participating Certificates voting at meetings or through referenda by mail, conducted prior to July 1, 1938, and every two years thereafter during the period of the Trust Agreement, in the manner provided in said Trust Agreement."

By the foregoing language and by the decree of the District Court the Court reserved jurisdiction over a proposed termination of the trust by the trustees but left unhampered the exercise of discretion by certificate holders respecting the discontinuance of the trust:

The voting trust agreement leaves the certificate holders free to terminate the voting trust as of July 1, 1938, or at the end of any succeeding two year period. There is nothing in the agreement, nor in the final decree of the court, to reserve any control over the discretion of the certificate holders, either to the court or to the trustees. It may be that the trustees are in possession of information which would enable the certificate holders to decide wisely. If the appellants-respondents have misrepresented any facts to other certificate holders, or if they are mistaken in their appraisal of the value of the services of the trustees, the trustees are in a position to correct any false impressions by furnishing correct information to the certificate holders. But under the terms of the trust agreement and the final decree of the District Court the matter of continuance or discontinuance of the voting trust agreement *by the certificate holders* is a question for the certificate holders, and we are of the opinion that the District Court is without jurisdiction to interfere with the efforts of one or more certificate holders to induce a majority, in amount, of the participating certificate holders to vote for the termination of the trust agreement involved.

While we are of the opinion that the District Court was without jurisdiction to issue the temporary injunction, even if the conduct of the respondents had been improper, we are also of the opinion that the activities of the respondents were proper under the terms of the trust agreement. The portions of the written communication which the respondents sent to other participating holders, which are especially objectionable to the petitioners, may minimize unduly the merits of the management under the voting trust arrangement, but they do not contain any actual misrepresentation of fact. The respondents, who own 22% in amount of the participating certificates, have a substantial interest in

---

stock of Aquitania Apartments Company."

\* \* \* \* \* \* \*

"6. The court hereby retains jurisdiction over the trustees under the trust agreement dated as of July 1, 1936, for the purpose of considering and acting on

any matters concerning the sale of the property or stock held by the trustees, or other questions which may be referred to the court by the said trustees, in accordance with the specific provisions of the said trust agreement."

the property and have a legal right, expressly recognized in the trust agreement, to urge a discontinuance of the present trustee management, and the court may not enjoin their efforts to win the support of fellow certificate holders by presenting the facts of the present management and urging their own conclusions respecting the benefits of that management, even granting their conclusions are erroneous.

We conclude that the District Court erred in entering the interlocutory injunction appealed from in causes No. 6653 and 6654 and the decree of the District Court is reversed and the injunction vacated.