## In re CAMDEN RAIL & HARBOR TERMINAL CORPORATION.

### No. 26341.

District Court, D. New Jersey.

Nov. 18, 1940.

Bleakley, Stockwell, Lewis & Zink, of Camden, N. J., and McCarter, English & Egner, of Newark, N. J. (Augustus C. Studer, Jr., of Newark, N. J., of counsel), for Frederick Cohen, petitioner.

French, Richards & Bradley, of Camden, N. J., for Samuel Cooke, Percy Ingalls, and Collier B. Sparger, directors of Camden Refrigerating & Terminals Co., and Reading Co., principal stockholder.

Norcross & Farr, of Camden, N. J., for Camden Trust Co.

Menken, Ferguson & Idler (by Irving G. Idler) of New York City, for Reorganization Committee for 6½% First Mortgage Bondholders of Camden Rail & Harbor Terminal Corporation, debtor.

Morton E. Yohalem, of New York City, for Securities & Exchange Commission.

FORMAN, District Judge.

On September 30, 1932, a bill in equity was filed in this court, as a result of which Frederick Cohen and Edwin G. C. Bleakley were appointed co-receivers of the Camden Rail and Harbor Terminal Corporation. The corporation was thus administered until July 7, 1937, when a petition was filed to reorganize it under the provisions of Section 77B of the Bankruptcy Law of the United States, 11 U.S. C.A. § 207. As a result of the institution of these proceedings, the same co-receivers, Frederick Cohen and Edwin G. C. Bleakley, were confirmed as trustees on August 13, 1937.

A plan of reorganization was finally proposed in which, among other things, it was provided that a new company was to be organized. The property and assets of the Debtor were to be transferred to the new company, which was to make payment of the expenses of reorganization, provide for the payment of taxes and assessments, execute and deliver a mortgage in the sum of $250,000, and to issue and distribute certain preferred and common stock to creditors and stockholders of the Debtor in accordance with the terms specifically set forth in the plan. In so far as the directors and officers of the new company were concerned, the plan provided as follows: "The Board of Directors of said 'New Company' shall be five in number and elected for a term of one year or until their successors may be elected. The personnel of the Board of Directors and officers of the 'New Company' for the first year shall be subject to the approval of the Court."

On March 17, 1939, the court confirmed the said plan of reorganization and ordered that the new company mentioned in the plan should be known as the Camden Refrigerating & Terminals Co. Its charter and other documents necessary for the consummation of the plan were approved by the court. The said order contained the following references to the officers and directors of the new company:

"It is, on motion of Henry F. Stockwell, Counsel for said Trustees, found, determined, ordered, adjudged and decreed as follows:

* * *

"That the identity, qualifications and affiliations of the persons who have been sug-

gested to the Court as directors and officers of the new Corporation, to wit:

### For Directors:

| Name: | Address: |
|---|---|
| Andrew V. Brown | Terwood, Penna.— Mtg. County |
| Samuel Cooke | Elkins Park, Penna. |
| Frederick Cohen | Merchantville, New Jersey |
| Percy Ingalls | Orange, New Jersey |
| Collier B. Sparger | Scarsdale, New York |

### For Officers:

Name:

President, Andrew V. Brown Terwood, Penna.

Vice President, Frederick Cohen Merchantville, N. J.

Secretary, Collier B. Sparger Scarsdale, N. Y.

Treasurer, William E. Manners, Wenonah, N. J.

have been fully disclosed, and that the appointment of such persons to such offices is equitable, compatible with the interests of the creditors and stockholders and consistent with the public policy and is hereby approved."

The Camden Refrigerating & Terminals Co. was organized March 27, 1939, and its charter and by-laws were approved by this court April 1, 1939. On or about the latter date a bond and mortgage were executed and delivered by the new company to the Camden Trust Company in the principal sum of $250,000, Frederick Cohen, individually, became liable upon the bond. Out of the proceeds of said mortgage payments for taxes, as proposed in the plan, were made to the City of Camden. This mortgage contained a provision concerning the management in the following language: "* * * In the event the mortgaged property is operated by Mortgagor or is operated in any manner other than under a lease or leases, as herein provided, the management of the mortgaged property and the compensation of the individual members thereof shall be satisfactory to Mortgagee, and if such changes in management of the mortgaged property or the compensation of the individual members thereof as shall satisfy Mortgagee, are not made within thirty (30) days after receipt by Mortgagor of notice that such management or such compensation is not satisfactory to Mortgagee, the entire indebtedness evidenced by the bond and secured by this mortgage, shall be immediately due and payable at the sole option of the Mortgagee."

After the organization of the new company, notices were sent out to creditors and security holders informing them as to how they might obtain the securities to which they were entitled under the plan. In April of 1940, an order was entered providing for allowances and expenses of various petitioners concerned in the reorganization, which were made a charge against the new company, payments of which were to be made in accordance with the availability of funds on the part of the new company. The new company functioned until March of 1940, when the annual stockholders meeting was held. The same directors were elected for the ensuing year.

Frederick Cohen was the president of the original Camden Rail and Harbor Terminal Corporation from its organization and continued to be the operating head of the concern during his tenure as co-receiver in equity and as co-trustee under 77B. When the new company was launched, he was made vice president of it and was designated as its general manager. On July 16, 1940, he filed a petition in this court in which he alleged, among other things, that at the annual meeting of the Board of Directors, held on June 18, 1940, the same officers were continued for the ensuing year. At a monthly meeting of the Board, held on the same day, there was presented to the Board, the resignation of Andrew V. Brown, the president of the company and one of the directors. Samuel Cooke proposed the election of E. D. V. Sullivan to be a director and president of the company in the place of said Brown. Mr. Cooke's proposal received the approval of his colleagues, Percy Ingalls and Collier B. Sparger, but Mr. Cohen registered his opposition against Mr. Sullivan. Mr. Cohen stated that the said three directors expected to install Mr. Sullivan at the July 16, 1940, meeting of the Board of Directors and to oust him from his position as general manager and vice president. He further charged that Sullivan had no interest in the company and was in fact the head of several other companies engaged in competition with the Camden Refrigerating & Terminals Co. He averred that the installation of Sullivan would be inimical to public policy, and in violation of Section 621(5) of Sub-Chapter XI, under Title 11 of U.S.C.A. and

that it would do him and other stockholders of the company irreparable injury. He asked that the three directors, Samuel Cooke, Percy Ingalls and Collier B. Sparger should be restrained from taking action toward the election of the new president, or to displace him (Mr. Cohen) as vice president and general manager, unless and until all the facts were presented to the court.

Based upon this petition an order was made directing the said three directors to show cause why they should not be enjoined from taking the action indicated in the petition. Before any argument was heard on the above order to show cause an ancillary petition was filed by Mr. Cohen on August 12, 1940, in which he reiterated a number of allegations contained in his petition of July 16, 1940, and alleged that on July 19, 1940, after the service of the order to show cause based upon his petition of July 16, 1940, directed to the directors of the Camden Refrigerating & Terminals Co., the Camden Trust Company, Mortgagee, heretofore mentioned, directed a letter to the Camden Refrigerating & Terminals Co. in the following language:

"Camden Trust Company
"Camden, N. J.
"July 18, 1940.
"Camden Refrigerating and Terminals Company,
"Kaighn Avenue and Delaware River,
"Camden, New Jersey.
"Gentlemen:

"Notice is hereby given, pursuant to paragraph 7 of that certain mortgage made by Camden Refrigerating and Terminals Company to Camden Trust Company which is dated March 31, 1939 and is recorded in the Office of the Register of Deeds of Camden County in Book 446 of Mortgages, Page 437 &c and in Book 69 of Chattel Mortgages Page 480 &c., that the management of the mortgaged property is unsatisfactory to said Camden Trust Company in the following particular:

"The further continuation of the services of Frederick Cohen as an Officer and Director or as Manager of said Camden Refrigerating and Terminals Company, on the ground that his services as an Officer and Director and as Manager of said Company discloses him not to be competent to produce satisfactory revenue from the operation of said property; and also unable to harmoniously associate himself with the other Directors of said Company in the management and operation of said mortgaged premises.

"Unless this matter is adjusted to the satisfaction of Camden Trust Company within a period of thirty days after the receipt of this notice, Notice is also hereby given, pursuant to said paragraph 7 of said mortgage, that the entire indebtedness which is evidenced by said mortgage and said bond which is secured by it, shall be and become immediately due and payable.
"Very truly yours,
"HK:N        (Signed)  Henry Knepper
"Reg.Mail R.R.              Vice President."

Mr. Cohen alleged in his petition, among other things, that the payments due to the Camden Trust Company, under its mortgage, had been met promptly and that the financial management of the Camden Refrigerating & Terminals Co. under his direction had been successful and that the Camden Trust Company was not acting in good faith when it expressed its dissatisfaction with the management of the mortgaged property. He petitioned that an order should be made directing the Camden Trust Company to refrain from declaring the principal amount of the mortgage due and payable and from foreclosing the mortgage, as threatened in its letter of July 19, 1940.

Under date of August 12, 1940, an order was made directing the Camden Trust Company to show cause why the prayer contained in the said petition should not be granted.

On August 28, 1940, Mr. Cohen filed a third petition, in which he charged, among other things, that on August 20, 1940, at a meeting of the directors of the Camden Refrigerating & Terminals Co., Cooke, Ingalls and Sparger passed the following resolutions over his protests:

"Whereby the storage rate for apples for the coming season be fixed at two cents per bushel less than the prevailing rate in the leading warehouses in Philadelphia with a minimum of not less than eighteen cents and boxes at a pro rata amount.
\* \* \*

"Resolved that until the injunction restraining the directors from electing Mr. Sullivan president and removing Mr. Cohen as vice president has been dissolved, in addition to the present authorized signatures, J. H. Genung's signature be required on all checks, warehouse receipts and storage contracts and that no loans be made

except those secured by warehouse receipts and then for not more than fifty per cent (50%) of the market value of the commodity stored without the approval of one of the members of the Board of Directors who is not an officer of the company."

Mr. Cohen charged that these resolutions were deliberately adopted in an effort to harass the Camden Refrigerating & Terminals Co. and himself as vice president and general manager thereof and to injure the business of the company in order that a distorted picture of the affairs of the company could be presented to the court on September 20, 1940, which by adjournment or otherwise had become the return day of the two previously mentioned orders to show cause.

He petitioned that an order should be made setting aside the resolutions of the Camden Refrigerating & Terminals Co. of August 20, 1940, as void and of no avail and as encroaching upon the orders of this court continuing the petitioner as vice president and general manager of the company until the hearing fixed for September 20, 1940, and that the Camden Trust Company be restrained and enjoined from insisting that the checks of the Camden Refrigerating & Terminals Co. have any additional signatures other than those signatures authorized by the company prior to August 20, 1940.

Again on this petition an order was issued directing:

(a) The directors, Cooke, Ingalls and Sparger to show cause why the resolutions should not be set aside, and

(b) The Camden Trust Company to show cause why it should not be enjoined from insisting on additional signatures on checks, etc.

This order was returnable the following day, viz., August 29, 1940, but an agreement was reached that certain checks required for the conduct of the business would be signed and countersigned in a manner satisfactory to all parties and the issue raised in this last mentioned petition, together with those raised by the preceding petitions should all be argued before the court on September 20, 1940.

On that day the petitioner, Mr. Cohen, made a proffer of proof, of the factual elements upon which he based his arguments, the material factors of which were conceded by the parties, and the matter was submitted upon briefs. The petitioner argues that the subject matter of the various

petitions is properly before the court by reason of the fact that the plan of reorganization is still incomplete and that the court has retained jurisdiction over the subject matters and the parties so as to give it authority to grant the relief sought under the respective petitions. The petition sets up that the trustees, under the proceedings brought pursuant to Section 77B of the Bankruptcy Law are still under bond, that the allowances amounting to over $41,000 to some sixteen individuals and corporations have not been paid by the reorganized company and that no final decree has been entered in the case. He supported his theory that this court has jurisdiction in the premises and pointed to Section 207, sub. h, of 11 U.S.C.A., Section 77B, sub. h, of the Bankruptcy Act, as follows: "Upon final confirmation of the plan, the debtor and other corporation or corporations organized or to be organized for the purpose of carrying out the plan, shall have full power and authority to, and shall put into effect and carry out the plan and the orders of the judge relative thereto, under and subject to the supervision and control of the judge."

The Chandler Act, 11 U.S.C.A. § 624, reads: "(2) the debtor and every other corporation organized as to be organized for the purpose of carrying out the plan shall comply with the provisions of the plan and with all orders of the court relative thereto and shall take all action necessary to carry out the plan", etc.

He also cites a number of cases to support his theory.

The authority of the court to grant the relief is challenged by the directors, Cooke, Ingalls and Sparger, the Reorganization Committee for the 6½% Mortgage Bondholders of the Camden Rail and Harbor Terminal Corporation, debtor, and the Camden Trust Company. The latter further insists that it has a right under the management clause of its mortgage to make the objections contained in its letter of July 19, 1940, and the mortgagor, and similarly that it had the right to insist upon the countersignatures on checks, etc., required by the resolutions of the three directors of the company.

The order confirming the plan of reorganization contains the following provisions reserving jurisdiction in the court:

"8. That the said Plan is hereby finally confirmed, and the Debtor and its Trustees and the new Company mentioned in

the Plan are hereby directed to take all action which may be necessary or proper to put the Plan into effect and to carry out and consummate the same, subject at all times to the supervision and control of this Court and to such orders and directions in the premises as this Court may hereafter from time to time enter."

\* \* \*

"12. The right is reserved to all parties in interest to make such further application to the Court in the premises as occasion may require and as may be necessary to effectuate the consummation of the Plan."

In 1932, four years after its birth, this company sought a haven in this court by way of equity receivership. Its affairs remained locked in the custody of the court until about April 1, 1939, when the proceedings in equity having been transmitted into reorganization proceedings under the Bankruptcy Law, made possible the launching of the reorganized craft into the economic sea under its own power. Prior to this the court had approved every essential feature of the reorganization plan, the charter and by-laws of the new company, and the officers and directors suggested *for the first year*.

■ Nothing remained in the way of consummation of the plan of reorganization except that some creditors and stockholders remained tardy in their application for the securities to which they were entitled under the plan of reorganization and the new company had not yet found itself in position to pay the fees and allowances which had been directed by the court to be paid when funds became available to the new company for such purposes. These were mere incidents designed to follow the consummation of the plan. That the final decree has not been entered in this case, likewise, does not detract from the practical status of the reorganization of the company as being completely effected.

■ At the expiration of the first year of its operation in March of 1940, the stockholders met and duly elected the directors of their choice. They neither sought nor needed any approval of the court for this purpose. Similarly the Board of Directors seeks to choose its own officers by a vote of a majority of its members and concedes that it intends to replace Mr. Cohen as an officer and as general manager of the company because it is dissatisfied with his services. Mr. Cohen says that they are unjustified in this expression of their dissatisfaction, that he is a good manager and that he should remain. He points to his long service, his financial interest in the company, the fact that he is personally liable on the mortgage for $250,000 to the Camden Trust Company, and that the other directors have no substantial investment of their personal funds in the company.

■ Thus there is generated a controversy between a majority, three of the elected directors of the corporation, and a minority of one of such directors. The reservation of the jurisdiction in this court to entertain such a controversy was never intended either by the Bankruptcy Law or by the orders of the court.

The cases cited by the plaintiff indicate that certain powers are reserved by the Bankruptcy Act and may be reserved by the court in reorganization proceedings. None of the cases is analogous to the inter-director controversy raised in this case. To decide this issue otherwise would be to burden this court with the ultimate decision in unending controversies over business policies which arise interminably between those managers of a company who are selected by the stockholders to conduct its business. The court should not be called upon to substitute its judgment in the place of that of a majority of the directors, chosen by the stockholders to carry on the business policies of the company. If such managers err, they are accountable and responsible for such errors to their electors. If Mr. Cohen's personal rights have been transgressed by the directors, he has such personal remedies as he may be advised against them.

■ The second petition filed on August 12, 1940, prays that the Camden Trust Company should be restrained from enforcing its management clause. The court sees no reason why such restraint should be enforced upon the mortgagee at this time. If the mortgagee carries out its threat and actually institutes an action, matters of defense may be offered, but there is no jurisdiction in this court to thwart the institution of such an action under the circumstances presented here.

■ The third petition seeks to enjoin the majority of the directors from requiring additional signatures to checks, etc., and to restrain the Camden Trust Company from insisting upon such countersignatures appearing upon such documents. Again

there is no power in the court to enjoin the directors from promulgating this regulation, and if they do so, certainly the Camden Trust Company must honor such an official direction to it in the method of withdrawing funds in its hands.

Therefore, in each instance, the orders to show cause, based upon petitions filed July 16, 1940; August 12, 1940; and August 28, 1940, must be discharged.