CLINTON TRUST CO. et al. v. JOHN H.
ELLIOTT LEATHER CO. et al.

In re MICHEL, MAKSIK & FELDMAN, Inc.

No. 50.

Circuit Court of Appeals, Second Circuit.

Dec. 9, 1942.

Milton Kunen, of New York City (Kaye, Scholer, Fierman & Hays and Phillip F. Seigenfeld, all of New York City, on the brief), for appellant Creditors' Committee.

Samuel Michelman, of New York City (Olvany, Eisner & Donnelly, of New York City, on the brief), for appellant 155 Madison Avenue Realty Corporation.

R. Lewis Townsend, Asst. U. S. Atty., of New York City (Mathias F. Correa, U. S. Atty., of New York City, on the brief), for appellant Higgins.

Edward K. Hanlon, of New York City (Beekman, Bogue, Stephens & Black, Baldwin, Todd & Young, Parker, Chapin & Flattau, Samuel M. Lane, Milton Weiss, and Sydney W. Cable, all of New York City, on the brief), for appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The question which the parties have raised on appeal before us is as to the status of debts incurred by a corporation after confirmation of a plan for its reorganization in proceedings under former § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, but before the debtor's total default in carrying out the plan some four and a half years later. A bankruptcy referee sitting as special master ruled that, in view of the court's retention of jurisdiction of the proceedings until the plan was complied with, these debts were entitled to priority as "expenses of administration" upon liquidation of the debtor's assets; but the district court declined so to hold and ruled that they had no priority over the older debts of the corporation. While the issue is a narrow one, yet its resolution requires a general consideration of the status of a reorganized corporation and of the debts incurred by it.

The debtor herein, Michel, Maksik & Feldman, Inc., petitioned for reorganization in August, 1935. The court issued various orders continuing the corporation in the management of its estate as a "debtor in possession" and "subject to the control of this court" until further order of

the court. Thereafter, a plan of reorganization was submitted, which in its final form provided for a 30% shrinkage of the claims of old creditors and payment of the 70% balance in installments ranging over a period of four years. In the event of default in the payment of any installment, a creditors' committee, designated under the plan, was authorized "to require the Debtor to immediately liquidate its assets under the supervision of the Committee or, at the Committee's option, pursuant to the supervision of the United States District Court for the Southern District of New York in the Debtor proceedings now pending." The final paragraphs stated that "the plan of reorganization will be carried out by revesting in the Debtor all of the assets of the Debtor, and will be consummated in the proceedings now pending for the reorganization of said Debtor corporation under Section 77B of the Bankruptcy Act," and that "the Court shall retain jurisdiction over the Debtor and its assets until full payment of creditors' claims above provided for shall have been made."

In January, 1935, the court confirmed the plan. In so doing it restated the provisions as to consummation of the plan thus:

"6. That all of the assets, property and effects of the Debtor, whether now in existence or hereafter acquired by it, shall be deemed to be the property of the said Debtor free and clear of all claims of its creditors, and all such creditors, as well as any other persons holding or asserting claims against the Debtor, be and each of them is forever barred from making or asserting any claim against the Debtor, or against the property, assets and effects of the Debtor, except for the amounts set forth in the annexed schedules. * * *

"8. That this Court retains jurisdiction over the Debtor and its assets, property and effects until full compliance with this decree has been made. Upon such compliance having been made, the Debtor shall be entitled to apply to this Court for an order terminating this proceeding and containing such other provisions by way of injunction or otherwise as may be appropriate."

Immediately after the entry of this order, the creditors' committee moved for its resettlement on the ground that the order did not fully carry out the provisions of the plan for retention of jurisdiction until final payment of all the claims, which might be some four years later. The court, however, accepted the views of the debtor's counsel that paragraph 8 of the order did just that, and denied the motion.

After confirmation of the plan the debtor carried on its business, subject only to the passive supervision of the creditors' committee, and new liabilities were incurred without consent of the court. Default first occurred in the payment of the installments due on the old compromised debts in June, 1938, after somewhat more than half of each claim had been satisfied. No payments were thereafter made; but the creditors' committee, as authorized by the plan, extended the dates for payments from time to time, and certain of the old creditors executed a "subordination agreement" agreeing to subordinate their claims to those of creditors thereafter extending credit to the debtor. On May 22, 1940, however, the committee decided that the debtor was hopelessly involved, and undertook its liquidation.

In August, 1940, after most of the assets had been reduced to cash, the committee decided to, and did, petition the court to "retake jurisdiction" in order to decide upon a proper distribution of the debtor's funds, and determine respective priorities among various classes of creditors. The prayer of the petition was for an order to the debtor, its stockholders, and all its creditors to show cause why the court "should not resume full jurisdiction of this case pursuant to Section 77B of the National Bankruptcy Act and such other provisions of the National Bankruptcy Act as may be proper and pertain to the situation." Attached as an exhibit to the petition was a "consent" of the debtor that the court "take jurisdiction of its assets and affairs"; neither the "consent" nor the show cause order is included in the record, however. From the recitals in the order granting the petition on October 15, 1940, it appears, also, that the debtor "joined in the request of the creditors' committee," that notice was given to the creditors and all parties in interest, that certain creditors did appear, and that no opposition was interposed on behalf of any of the parties in interest to the granting of the relief set forth in the order.

The order itself is a lengthy document in several paragraphs. The court first found it had jurisdiction to grant the relief; then it did "hereby resume full juris-

diction of the proceedings herein and all of the assets of the debtor"; next it directed the debtor under the supervision of the creditors' committee to reduce all remaining assets to cash; and finally it referred the proceedings to a bankruptcy referee as a special master to set a time for the filing of claims not already filed and determine priorities and allowances and "any and all matters that may at any time arise in connection with the liquidation" of the debtor's assets. It also provided that the orders of the master might be brought before the court on petitions for review within ten days after their signing, but otherwise should be deemed orders of the court and final and binding upon all parties in interest. It directed the master to report, upon the debtor's compliance with the terms of the order, the fact of such compliance, "with his recommendations that the court discharge the debtor and terminate the proceedings." Finally it provided for retention of jurisdiction by the court for the determination of "any matter that may be presented to it in the premises," and stayed all interference with the debtor's assets by all creditors or any other persons.

Thereafter, in July, 1941, the matter came on for a hearing before the master, who in the following October entered an order finding that the creditors who had extended credit after the issuance of the confirmation order were entitled to priority over the compromised claims of the old creditors. Several creditors filed petitions for review—not printed in the record—upon which the district court reversed the referee's finding, ruled against the asserted priority, and referred the matter back for reclassification of the claims, determination of the effect of the subordination agreement, and any other questions properly affecting these issues.

The appeals before us were brought by other creditors who were adversely affected by the district court's decision. One of these appellants, the Collector of Internal Revenue, claims priority for unpaid income taxes—if not as expenses of administration, then under the Bankruptcy Act, § 64, sub. a(4), 11 U.S.C.A. § 104, sub. a(4). The other appellants simply seek priority for their claims as expenses of administration, contending that the confirmation order did not close the court's administration of the estate, in view of the provisions of the plan, reënforced by

the order, for the court's retention of jurisdiction over the debtor and its assets until all the old compromised debts should be fully paid. On the other hand, appellees, representing old creditors, argue that the provision in the plan "revesting in the Debtor all of the assets of the Debtor" and the corresponding provision in the confirmation order that all of the debtor's assets "shall be deemed to be the property of the said Debtor" necessarily terminated the court's administration of the estate and placed liabilities thereafter incurred on a par with the old compromised claims.

It seems clear, at the outset, that unless the court could and did retain a general jurisdiction to control the affairs of the debtor, the expenses of carrying on the business, for which priority is now claimed, cannot be properly viewed as expenses of administration within the view of cases such as In re Avorn Dress Co., 2 Cir., 78 F.2d 681. For there, the business is being carried on under active court supervision by the trustee or debtor in possession; and priority does not continue after the proceeding has terminated. In re James Butler Grocery Co., 2 Cir., 100 F.2d 376. Indeed, express statutory basis for the priority is lacking in any event. The only provision which makes the ordinary bankruptcy priorities of § 64 applicable here is § 77B, sub. k, but that states that § 64 (among others) shall not apply "unless and until" an order to liquidate the estate has been entered under sub. c(8). The latter section provides for an order of liquidation only when a plan is not proposed or accepted or confirmed. There is no provision for priority after a plan has been confirmed. And in Vogel v. Mohawk Electric Sales Co., 2 Cir., 126 F.2d 759, 761, we said, with respect to an *arrangement*, that "the period of 'administration' certainly ends no later than the entry of the order of confirmation," and that a new debt was not an "expense of administration." It would perhaps be reasonable, however, to conclude that if the court has power to retain general supervisory jurisdiction, the situation is not unlike that of the trustee or debtor in possession who incurs expenses in carrying on the business. We turn, therefore, to the larger question of the court's power to retain such jurisdiction, an important, though surprisingly little discussed, problem.

For the answer to this question we turn first to the reorganization statute itself. Sec. 77B, sub. h, states that upon final confirmation of the plan the reorganized debtor "shall have full power and authority to, and shall put into effect and carry out the plan and the orders of the judge relative thereto, under and subject to the supervision and control of the judge." But it seems clear that this is not intended to authorize the court to exercise control over the management of the debtor's business. The provision already referred to, § 77B, sub. c(8) and sub. k, permitting liquidation only in the event that no plan is proposed or none confirmed, is strong argument that the court's control over the debtor's business activities terminates as of the date of the issuance of the confirmation order, and that thereafter the debtor is a "reorganized debtor," and not a "debtor in possession." Sub. h further provides that "upon final confirmation of the plan * * * the property dealt with by the plan * * * when retained by the debtor pursuant to the plan * * * shall be free and clean of all claims," except those reserved in the court's order consistently with the provisions of the plan; that the court may direct the trustee, debtor, mortgagee, or all other necessary parties to make such transfers or conveyances as are required; and that "upon the termination of the proceedings" a final decree shall be entered "discharging the trustee or trustees, if any, making such provisions as may be equitable, by way of injunction or otherwise, and closing the case." The whole tenor of this is that the court sees to it that the plan is put into effect, and then, with reasonable promptitude, closes the case by its final decree, which, among other things, discharges the trustee.[2] In re Corona Radio & Television Corp., 7 Cir., 102 F.2d 959; In re Argyle-Lake Shore Corp., 7 Cir., 98 F.2d 372; In re Ambassador Hotel Corp., 2 Cir., 124 F.2d 435; In re James Butler Grocery Co., supra; In re Camden Rail & Harbor Terminal Corp., D.C.N.J., 35 F.Supp. 862; cf. In re Sherland Bldg. Corp., D.C.N.D. Ind., 29 F.Supp. 985.

Quite consistently with this view, and as explained by several text writers, the reorganization court, as in the old equity receivership, may well be permitted to retain a jurisdiction to protect its decree, prevent interference with the execution of the plan, and otherwise aid in its operation. Finletter, Principles of Corporate Reorganization in Bankruptcy, 1938, 466, 604; Finletter, The Law of Bankruptcy Reorganization, 1939, 492, 660; 3 Gerdes on Corporate Reorganizations, 1936, 1828; 10 Remington on Bankruptcy, 5th Ed. 1939, § 4619. But this is a jurisdiction at most "complementary" to that of confirming the plan and in reality only auxiliary to it. Bakers Share Corp. v. London Terrace, Inc., 2 Cir., 130 F.2d 157, 159; In re Paramount Publix Corp., 2 Cir., 82 F.2d 230; In re 4145 Broadway Hotel Co., 7 Cir., 100 F.2d 7; National Lock Co. v. Hogland, 7 Cir., 101 F.2d 576; In re Baldwin Locomotive Works, D.C.Pa., 35 F.Supp. 773; cf. In re Diversey Bldg. Corp., 7 Cir., 90 F.2d 703.[3] It is not one for control of the corporation indefinitely or for keeping it in tutelage to the court, so that the latter must pass upon its business activities. The intent of § 77B is to bring a corporation back into active operation as expeditiously as possible. After the confirmation of a plan for its reorganization, general judicial control of its business becomes superfluous, and, indeed, may well be a hindrance to its dealings with third parties. Finletter, The Law of Bankruptcy Reorganization, 1939, 492.[4]

[2] So, also, under the present Chapter X proceedings. §§ 224–228, and see, also, §§ 204, 205, and 216(11), 11 U.S.C.A. §§ 624–628, and 604, 605, 616(11); 10 Remington on Bankruptcy, 5th Ed. 1939, § 4629.

[3] In a few cases more extensive control seems to have been retained without discussion. In re Middle West Utilities Co., C.C.H.Bankr.Serv. par. 3671, D.C.N.D. Ill.1935; In re H. W. Clark Co., 7 Cir., 79 F.2d 681; cf. In re Ogden Park Post Office Bldg. Corp., D.C.N.D.Ill., 14 F. Supp. 413. Cf. Inch, J., in In re Pru-

dence Bonds Corp., D.C.E.D.N.Y., 16 F. Supp. 324, "Nor can a court continue to run the business of a corporation indefinitely"; In re Witherbee Court Corp., C. C.H.Bankr.Serv. par. 51,475, D.C.S.D. N.Y.1938, Patterson, J.

[4] Compare the problem in arrangement proceedings under Chapter XI, 11 U.S.C. A. § 701 et seq., where, unlike § 77B or Chapter X, 11 U.S.C.A. § 501 et seq., there is express statutory authority for retention of jurisdiction. Seedman v. Friedman, 2 Cir., 132 F.2d 290, as to meaning and effect of a general reserva-

■ But whatever may be the maximum limit of the court's power to retain jurisdiction after the debtor's reorganization, the whole tenor of this proceeding indicates that the court's intention was not to retain general control over the business affairs of the debtor, but to establish it as "reorganized" upon the issuance of the confirmation order. Prior to that time the court's orders continuing the debtor in the management of its estate had expressly described the debtor as a "debtor in possession" and had provided for a close judicial control over its activities. The plan, however, "revested" the debtor's assets in the debtor, and the confirmation order incorporated a paraphrase of sub. h. The plan and order also reduced the old claims by 30%, a compromise never revoked or disturbed. True, the court retained jurisdiction over the debtor and its assets until all payments on the compromised claims should be made. In Seedman v. Friedman, 2 Cir., 132 F.2d 290, we interpreted a somewhat similar provision in an arrangement to mean that the court thereby retained jurisdiction only for the particular purpose of guarding the old creditors against a default in any of the terms of the plan.[5] Here the provision neither in theory nor in practice authorized the court to exercise an over-all management of the debtor's business activities, but its intent, we think, was merely to assure the court a place in the background from which it could step forth and take over the control of the debtor's property, if need be, to protect the old creditors. Cf. 8 Collier on Bankruptcy, 14th Ed. 1941, 1246; In re Camden Rail & Harbor Terminal Corp., supra.

■ We conclude that appellants have shown no ground for priority of their claims as expenses of administration. But the appeal of the Collector of Internal Revenue and the mandate of the court below to the referee to classify the claims raise the problem as to what law or principle shall govern the classification. While the court does not so state, it seems implicit in its opinion that general bankruptcy rules govern. On the other hand, its order retaking jurisdiction of the debtor does not explicitly find bankruptcy. The most we can say is that it was intending to revive the original § 77B proceeding, and that

probably, although not surely, it was assuming the power to liquidate under the terms of the original plan.

■ Had the parties sought, and the court made, an adjudication of bankruptcy, this would then have been a new proceeding where the priorities established by § 64 would clearly govern. In re James Butler Grocery Co., supra. And had the court assumed merely to continue the proceeding under § 77B to liquidate with the consent of the parties, it would probably still have to apply § 64, virtute necessitatis, as was held in Re 168 Adams Bldg. Corp., 7 Cir., 105 F.2d 704, certiorari denied Steinbrecher v. Toman, 308 U.S. 623, 60 S.Ct. 378, 84 L.Ed. 520. But we think the same result should follow if, as we have thought more probable, it was acting in assumed execution of the plan. That provided for liquidation, at the option of the creditors' committee, under the supervision of the court in the § 77B proceeding. Such a provision could hardly bind later creditors who dealt with the corporation as fully reorganized, and there may be serious question how far it could deprive the debtor itself of the privileges of the Bankruptcy Act in the indefinite future, if, indeed, it intended such a restraint. True, a plan might provide for "the distribution of assets among creditors or any class thereof," § 77B, sub. b (9), and we have upheld plans looking to the ultimate liquidation of the debtor. In re Porto Rican American Tobacco Co., 2 Cir., 112 F.2d 655; In re Central Funding Corp., 2 Cir., 75 F.2d 256. But a plan devised to lead to an orderly liquidation as a major purpose is different from a plan devised to restore a debtor to active business, with liquidation merely a penalty for any default at any time over the long period during which debts are payable. Here, however, all such questions are set at rest because the debtor actually joined in the request for this relief and all parties in interest have accepted it and do not now challenge it. Nor are they in a position to do so; parties who have invoked or accepted the jurisdiction of the bankruptcy court to determine their claims to the debtor's assets may not thereafter attempt to challenge that jurisdiction. Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100; In re Ostlind Mfg. Co., D.C.Or., 19 F.Supp. 836. There can be no question of

tion in the plan; 8 Collier on Bankruptcy, 14th Ed. 1941, 1085, 1086, 1246, 1409.

[5] We also interpreted the Seedman provision as a short-lived affair, p. 294 of 132 F.2d; and see, also, note 4, supra.

the general jurisdiction of the bankruptcy court in the premises, § 77B, sub. a; Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 125–127, 60 S.Ct. 1, 84 L.Ed. 110; and even if there may have been irregularities in reaching the result, it would nevertheless be final and binding. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; U. S. ex rel. Emanuel v. Jaeger, 2 Cir., 117 F.2d 483; In re Ostlind Mfg. Co., supra. [6]

True, the plan itself left indefinite how the court was to proceed upon liquidation of the assets. But we think the court was correct in assuming, as it seems to have done, that none the less the bankruptcy principles governed. This was a reasonable deduction as to the intent of the original parties. When they planned to have the reorganization court supervise liquidation, it seems probable that they contemplated distribution according to the law that that court would normally apply—either in bankruptcy itself, or in liquidation as a result of failure to adopt a plan under § 77B, sub. k, which then makes § 64 applicable. And this is certainly the reasonable interpretation as to the later creditors who dealt with the corporation as fully reorganized. They were justified in assuming that upon any financial collapse, liquidation would take place in accordance with bankruptcy principles, and in filing their claims herein in good faith, rather than opposing the jurisdiction of the court to act without an adjudication in bankruptcy.

 Consequently we think that the court was correct in its refusal to follow the referee's grant of priority to the new claims, and that liquidation should follow in accordance with bankruptcy principles, with the date of the petition for resumption of jurisdiction to be taken as the time of bankruptcy. As did the court, we leave the effect of the subordination agreement to the master.

 In Seedman v. Friedman and Vogel v. Mohawk Electric Sales Co., supra, we have held that under the circumstances there present, new creditors after confirmation of an arrangement later set aside are entitled to priority. But both the facts and the law were different. In the Seedman case, the arrangement was set aside for fraud; and thus the provisions of § 64, sub. b, granting such priority in the event of the setting aside of a confirmation of an *arrangement,* became directly applicable. There are explicit provisions for the setting aside, within six months, of an arrangement procured by fraud, § 386, 11 U.S.C.A. § 786; and it is but natural that, since the discharge or compromise of debts is thus revoked, the new creditors who have trusted the faith of that discharge or compromise should be preferred. [7] In the Vogel case, the debtor had defaulted in carrying out the arrangement and the bankruptcy court had then reopened and dismissed the proceedings. Our court ruled that such dismissal was in substance, and hence in fact, equivalent to setting the arrangement aside; and thus § 64, sub. b, became directly applicable—a question of statutory interpretation, which was not without difficulty, as is pointed out in 8 Collier on Bankruptcy, 14th Ed. 1941, 1409—1412. A reason for the different statutory treatment of arrangements and reorganizations may well be the somewhat more direct and summary nature of an arrangement and its progenitor, the old composition of a debtor with its creditors, than the extensive and complicated task of reorganizing a large business corporation with various classes of secured creditors and stockholders, Securities and Exchange Commission v. U. S. Realty & Improvement Co., 310 U.S. 434, 446, 60 S.Ct. 1044, 1049, 84 L.Ed. 1293; Case v. Los Angeles Lumber Products Co., supra, 308 U.S. at page 119, 60 S.Ct. 1, 84 L.Ed. 110, and the comparatively strict time limitations applicable

---

[6] The order resuming jurisdiction would appear to be before us on appeal from the order reversing the referee's classification of claims. For in spite of the attempt in the earlier order to make the special master's orders final save for petition to review, it would seem that the later order was but action on the master's report, rather than review of a referee's order, and the petitions to review but objections to confirmation of the report. Federal Rules of Civil Procedure, rule 53(e), 28 U.S.C.A. following section 723c; 2 Collier on Bankruptcy, 14th Ed. 1940, 1502–1507. But no one has objected to the earlier order.

[7] While § 64, sub. b, contains no provisions expressly applicable to a *reorganization,* yet it does apply in the event of a revocation of the discharge of a bankrupt, which under § 15, 11 U.S.C.A. § 33, may be had for fraud if sought within a year. Here the plan operated as a partial discharge of the debtor, but no fraud is charged and the new proceedings occurred some 4½ years later.

to setting aside of an arrangement.[8] That claims arising from the ordinary business operation of a reorganized corporation over a long and indefinite period of time should have first priority as expenses of administration upon ultimate insolvency of the corporation would have been anomalous, indeed.

Affirmed.

---

[8] The Vogel case does not expressly decide that the six months' limitation of § 386 applies to a dismissal assimilated to a setting aside of the arrangement; from the dates, it would seem probable that the application was within the period; moreover, it is not clear how far the debtor had possession under the plan, compare In re Irving Electrical Supply Co., D.C.S.D.N.Y., 41 F.Supp. 16, the decision below, which is affirmed. See, also, the limitation of revocation of a discharge under § 15 to a year, note 7, supra. Some such time limitation on the application of § 64, sub. b, appears reasonable.