**BAKERS SHARE CORPORATION v. LONDON TERRACE, INC., et al.**

No. 309.

Circuit Court of Appeals, Second Circuit.

July 1, 1942.

Scribner & Miller, of New York City (Mark Hyman, Louis G. Bernstein, and Julius J. Rosenberg, all of New York City, of counsel), for appellant.

Robert LeRoy, of New York City, for London Terrace, Inc., et al., appellees.

Maurice Finkelstein and Herman N. Finkelstein, both of New York City, for Simon H. Scheuer, appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order in bankruptcy denying a petition of Bakers Share Corporation for an order declaring that the duration of a voting trust had been extended to March 31, 1947, and for other relief in the alternative. The facts out of which the controversy arose were as follows. On March 18, 1935, certain bondholders of the London Terrace Corporation (not the appellee) filed a petition for the reörganization of the company under § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, to which the debtor consented. After several amendments the court approved a plan known as the "Committee Plan" on August 5, 1936, which provided for the organization in New York of London Terrace, Inc.—the appellee—to take over the debtor's assets. The common shares of the new company were to be deposited in a voting trust, the trustees of which were to issue the usual transferable certificates of ownership; and the trust was to last for five years, before the expiration of which the voting trustees were to call together the certificate holders and take a vote as to extending it. If at that time it should be "permissible under the laws of the State of New York * * * to effect an automatic extension of this Agreement upon the failure of holders of Certificates to vote against any such extension," the trust was to last for another five years "unless the holders of Certificates representing not less than fifty-one per cent * * * vote against such extension." On the other hand, if the law of New York at that time did not permit "such extension," the trust would be extended only upon a vote of the majority of certificate holders.

The order approving the plan gave power to the creditors' committee, the debtor and "all interested parties" to carry out the plan "under and subject to the supervision and control of this Court," which reserved "full right and jurisdiction to make from time to time such other and further orders" as it might think proper. London Terrace, Inc. was organized, its common shares were transferred to trustees whom the court appointed and the trust went on for five years. Meanwhile, as the parties had anticipated, the New York Legislature passed the "Streit Law" (Chapter 900 of the Laws of 1936, Real Property Law, Consol.Laws, c. 50, § 124 et seq.) § 130-c (2) of which limited the duration of a voting trust to five years unless a majority of the shareholders by a new vote authorized its extension; the text of this section appears in the margin.[1] The voting trustees shortly before the five years expired called a meeting of the certificate holders, a majority of whom did not vote either for or against the continuance of the trust for another five years. Baker Shares Corporation, the petitioner, was the holder of a number of voting trust certificates and petitioned the

---

[1] "2. No agreement appointing trustees to vote the stock of any corporation formed or used under a plan or reorganization of property shall be valid for a longer term than five years and unless it has been submitted to and approved by the court and no trustees appointed by such agreement shall continue to act thereunder after the expiration of its term, unless and until a new or an extension agreement has been entered into and received the affirmative approval of the holders of at least fifty-one per centum of the stock."

bankruptcy court under the reserved power we have just quoted to declare that the "Streit Law" was not applicable to such a voting trust, but that it automatically continued for five years longer, notwithstanding the absence of any new assent by a majority of the shareholders. The court decided that that law did apply, declared the trust at an end and directed the trustees to distribute the shares. No stay having been granted pending the appeal, this distribution is said to have been very largely completed.

█ The first question is whether the bankruptcy court had jurisdiction to pass upon the question at all. In Re Ambassador Hotel Corporation, 2 Cir., 124 F.2d 435, we held that under a general reservation of power in the order approving a "plan" of reörganization, the bankruptcy court might not declare whether the "Streit Law" cut down the duration of a voting trust already set up before that law was passed. We said that the phrase in subdivision h of § 77B, "under and subject to the supervision and control of the judge," did not invest the judge with a general protectorate over "corporations organized * * * for the purpose of carrying out the plan." Our theory was that such a reservation gives him jurisdiction only to decide whether the parties to the "plan" carry out its provisions according to their true intent. Concededly, he would have no power to adjudge the rights and liabilities of the corporation arising from transactions with third persons; equally he has none to adjudge even the mutual rights and liabilities of the parties themselves, so far as those depend, not upon the contents of the "plan," but upon subsequent transactions between themselves, or upon modifications imposed by later changes in the law. In the case at bar, however, the "plan" itself made alternative provisions, one conditional upon the law's allowing a ten year trust, the other upon its forbidding one without a later consent of the shareholders. As matter of interpretation merely, and in order to decide how the "plan" should be carried out according to its own terms, it was therefore necessary for the judge to decide the meaning of the statute. There is nothing unusual in this; a bankruptcy court again and again finds it necessary to pass upon questions of state law. How far its decision in this case will be res judicata if the question arises elsewhere,

we need not consider; but the judge was right in assuming jurisdiction over the question and we pass to the merits.

█ The "Streit Law" is Article IV-A of the Real Property Law; it covers only unguaranteed mortgages, guaranteed mortgages being dealt with in the Mortgage Commission Law, McK. Unconsol. Laws, § 1751 et seq., and the "Schackno Law," McK.Unconsol.Laws, § 1796 et seq. Before its enactment in 1936 the legislature had passed the so-called "Burchill Law" (Real Property Law, §§ 119–123, inclusive, of Chapter 729 of the Laws of 1933) which provided for the purchase upon foreclosure of mortgaged property by the trustee of the mortgage; who might buy in the property on behalf of the beneficiaries and pay the purchase price by indorsing a credit upon the bonds. The property might then be conveyed to a new corporation created for that purpose (§ 121) under a "plan of reorganization" (§ 122), the details of which are not important for our purposes. The "Streit Law" was no doubt primarily meant to supplement this law; that is, to protect unguaranteed bondholders, not only before and during foreclosure, but at and after any reörganization which should follow under § 122; but there is no antecedent reason why the protection given to the shareholders of a new corporation organized in aid of such a reörganization should not be given to those of a similar corporation organized in aid of a reörganization under § 77B. No limitations upon the powers of such a corporation would in any sense invade the functions of the bankruptcy court; that court is not obliged to use a state corporation as its instrument at all; it may leave the debtor in possession of its property; but if it does choose to use one, it must take it with such powers as the state law sees fit to give it. The question whether the legislature meant these restrictions to apply to any but reörganizations under § 122, is another matter, and is all that is relevant. Some of the sections of the "Streit Law" would certainly have applied to the debtor at bar before reörganization; and although some were perhaps confined to reörganizations under § 122, others speak in general terms and, at least textually, apply to any corporation organized to take over property in reörganization. Moreover, the preamble (§ 124) and the cautionary canon for interpretation (§ 130-h) both admonish us to

give the statute a scope liberal enough to realize its underlying purpose. That purpose was to protect "mortgage investments" in general, a purpose to which the source of the property—that is, the kind of reörganization through which it devolved upon the corporation—could not have been relevant. The petitioner attempts to show the contrary, but unsuccessfully as will appear. It is true that there is no apparent reason why one system should have been set up for guaranteed, and another for unguaranteed, mortgages, but two systems indubitably were set up, and the only question here is whether the second extends to § 77B. We find further evidence of the breadth of the law in the definition of "court" in § 125(8) which the petitioner wishes to limit to a regulation of venue. If the phrase, "some other court," means only the supreme court for another county, the definition becomes self contradictory, for by hypothesis the "major portion" of the° property will not "be located" in the county of that "other court," and yet that is made the test of jurisdiction as between counties. Indeed, the definition contemplates that the law shall apply even to cases where the property lies outside the state, in view of which it ·would be most unreasonable to exclude those where, though within the state, it chances to be in the custody of "some other court" also within the state—the bankruptcy court.

The practical reasons put forward to justify the limitation are imaginary. The argument is that, although the Mortgage Commission Law, McK.Unconsol.Laws, § 1751 et seq., the Schackno Law Mc.K.Unconsol.Laws, § 1796 et seq., and § 77B all protected the shareholders of a new corporation by vesting the appointment of voting trustees in the court, so making it unnecessary to limit the period of the voting trust, no such protection was given in the "Streit Law." Section 77B had not a syllable on the subject; the only trustees which the statute required the bankruptcy court to appoint were those who held the debtor's property until the "plan" went into effect. The "plan" itself needed no trustees; and there is not the faintest reason to suppose that the parties were not authorized to appoint voting trustees. Indeed, that remains true even under the Chandler Act, § 216(11), 11 U.S.C.A. § 616(11), though it would make no difference if it did not, because it was passed two years after this reörganization was approved. It is, of course true that the court had to approve the plan as a whole; but so must the court approve in the same general way a "plan" under § 122. Indeed, were that relevant, which it is not, neither the Mortgage Commission Law nor the "Schackno Law" required the court to appoint voting trustees, whatever may have been the practice under them.

Order affirmed.