### In re PRESIDENT REALTY CO., Inc.

No. 25854.

District Court, D. New Jersey.
Sept. 11, 1946.

Norcross & Farr, of Camden, N. J. (Thomas M. Farr, of Camden, N. J., of counsel), for petitioners

Altman & Backer, by Samuel Backer, all of Atlantic City, N. J., and Gilbert W. Oswald, of Philadelphia, Pa. (Schnader, Kenworthy, Segal & Lewis, by Bernard Segal, all of Philadelphia, Pa., of counsel), for Hotel President Operating Co.

MADDEN, District Judge.

This matter comes before the Court, upon a petition for instructions, by trustees under a reorganization plan of the President Realty Company, Inc., a corporation of the State of New Jersey, and is opposed by a motion of dismissal by the Hotel President Operating Company, one of the parties in interest in the matter. One of the main attacks upon the petition of the trustees is to the jurisdiction of the court to hear and entertain such petition.

Prior to June, 1937, the President Realty Company, Inc., filed a petition in this court for reorganization of a corporation under the then Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. On June 23, 1937, this court appointed three trustees (two of the original trustees remain and by reason of the death of the third on March 16, 1942, a substitute was named on July 17, 1942) as the voting trustees of the outstanding capital stock of President Realty Company, Inc. On July 9, 1937, the said trustees executed a voting trust agreement, setting up the terms under which the said trustees should operate the corporation, and, in effect, making the trustees the directors of the reorganized company.

The President Realty Company, Inc., is the owner of the President Hotel located at Atlantic City, New Jersey, and this hotel property, together with its furniture, furnishings and equipment, constitute the sole assets of the corporation. The hotel is presently leased to the Hotel President Operating Company, a corporation of the State of New Jersey, under a lease which is dated July 1, 1937, and which will not expire, by its terms, until October 31, 1957. The terms and provisions of said lease were approved by this court under the then pending reorganization proceedings

In its final decree, entered November 4, 1938, this court found that the plan of reorganization had been "fully and completely executed, carried out and accomplished; discharged the trustees and declared the proceedings closed and terminated." The court, however, by its decree, reserved to itself, jurisdiction to pass upon

"applications by the voting trustees * * * for allowances for compensation, expenses and counsel fees, in connection with the administration of their trust and for instructions with respect thereto, and the making of orders in connection therewith."

On June 24, 1946, the trustees presented to this court a petition for advice and instructions wherein they informed the court that on June 17, 1946, the trustees had received an offer to purchase the hotel property, subject to the lease, for the sum of $1,025,000 in cash, but according to the terms of the trust agreement (approved under the plan of reorganization) it was necessary for two-thirds of the certificate holders of the corporation to approve the sale. That since the entry into possession by the tenant, under the previously described lease, and the confirmation of the reorganization plan by the court, the tenant, Hotel President Operating Company, had been purchasing mortgage participation certificates and voting trust certificates until it presently owned more than one-third thereof, namely 36.5 per cent.

The petition then alleges:

"* * * the petitioners have been informed and believe and, therefor, aver, that the Hotel President Operating Company proposes to vote the aforesaid voting trust certificates which it presently holds and owns, in disapproval of any offer for the purchase of said hotel to any person, corporation, partnership or association, other than itself, although it recently made an offer for the purchase of the hotel in an amount which would yield substantially less to other certificate holders than the present offer, which offer was rejected after failure to obtain consents from a sufficient number of other certificate holders."

The answer, filed herein by the tenant-certificate holder, seeking dismissal of the present petition, vigorously denies these allegations and avers:

"* * * that it is interested in buying the hotel if it can do so at a price that it considers fair and reasonable to itself as buyer. However, as the holders of mort-gage participation certificates and stock, the Operating Company is also interested in the possibility of the sale of the hotel to others if a price can be obtained which it considers fair and reasonable from the viewpoint of the seller."

The petition thereupon prays advice and instructions from the court with respect to the trustees' rights and obligations to vote the stock of the President Realty Company (held by said trustees) in favor of a sale of the property upon receipt of written consents from holders of less than two-thirds of the whole amount of outstanding voting trust certificates, and, if so, upon what condition; "and also with respect to the right of the said Hotel President Operating Company to vote the voting trust certificates which it presently holds and owns * * * in disapproval of the aforesaid offer * * * or any other offer"; and further, asking instructions respecting the terms and condition of any sale which may be ordered.

Upon the presentation of this petition by the trustees, the court issued an order to show cause why the prayers of the petition should not be granted, returnable before this court on August 9, 1946, and providing for proper notice to certificate holders and parties interested. Upon the return of the order to show cause, the tenant and certificate holder, Hotel President Operating Company, filed answer to the petition and moved to dismiss. Argument of counsel ensued, time was allowed for filing of briefs, and the matter adjourned until today, August 23, 1946. It might be said at this point that there has been no representation to the court of the action taken by the other certificate holders regarding the proposed sale, whether they have indicated approval or disapproval.

At the outset, it should be noted that this proceeding is not an original proceeding seeking relief from the court in equity for reformation of a trust agreement and alleging the necessary jurisdictional grounds, i. e., diversity of citizenship and the jurisdictional amount involved exclusive of interest and costs, but is an ancillary proceeding seeking its jurisdiction out of the reser-

vation in the final decree of confirmation of the reorganization plan or upon the theory that the court, being one of equity, can always have control over its own decrees.

Does the reservation in the final decree reserve to the court the power to pass upon the present question? The decree says that jurisdiction was reserved in the court "with respect to applications by the voting trustees and the trustees, under the Declaration of Trust for the benefit of the mortgage participation certificate holders who are presently, William H. Albright, Frank S. Norcross and George W. Wolin, for allowances for compensation, expenses and counsel fees, in connection with the administration of their trust and for instructions with respect thereto, and the making of orders in connection therewith."

The late beloved John Boyd Avis was the Judge who entered such decree and would be the best one to interpret the meaning of the language employed therein. However, in his absence, we must read the words of the reservation in the best light and see if he meant to reserve to the court the power to pass upon the business judgment of the trustees in their operation of the hotel company as though they were directors of a corporation, or did he mean to reserve to the court the right to pass upon the fees and expenses payable by the corporation to its operating directors.

A careful reading of the wording and language of the decree leads me to the conclusion that the reservation was only as to fees and expenses of the trustees and not a reservation to consider a controversy between stockholders and the director-trustees.

Now if the decree does not contain a specific reservation of jurisdiction in the court, can the court take jurisdiction over the present controversy, or, on the other hand, if the wording of the decree does retain jurisdiction in the court, did the court have power to reserve to itself the jurisdiction now sought?

Section 228 of the Bankruptcy Act, 11 U.S.C.A. § 628, provides:

"Upon the consummation of the plan, the judge shall enter a final decree—

"(1) discharging the debtor from all its debts and liabilities and terminating all rights and interests of stockholders of the debtor, except as provided in the plan or in the order confirming the plan or in the order directing or authorizing the transfer or retention of property;

"(2) discharging the trustee, if any;
*   *   *

"(4) closing the estate."

This act became effective September 22, 1938, and the final decree was entered herein on November 4, 1938, so that the court feels that this section is applicable and controlling.

In the Second Circuit, Judge Swan, speaking for the Circuit Court of Appeals in the matter of In re Ambassador Hotel Corporation, 1942, 124 F.2d 435, 436 said:

"When the court confirmed a plan of reorganization which set up a New York corporation with stock issued to voting trustees, it used a tool created under and subject to state laws. *The future fate of the corporation was not within the control of the bankruptcy court,* nor could that court reserve power to adjudicate controversies in which it might become involved—whether they should arise from a change in state law or from the corporation's own conduct, *   *   * But the bankruptcy court by confirming a plan of reorganization does not guarantee that the plan will be carried out regardless of what may befall the new corporation; *nor does it have ancillary jurisdiction to control litigation respecting future events which may affect the new corporation's ability to carry out the plan.*"

See also, Bakers Share Corporation v. London Terrace Inc., 2 Cir., 1942, 130 F.2d 157, and in Re Flatbush Ave-Nevins Street Corporation, 133 F.2d 760, 762, Judge Frank, speaking for the Second Circuit in 1943, said:

"Congress did not intend that the Bankruptcy Court should, after an approval of a plan under Chapter X, Bankr.Act, 11 U.S.C.A. § 501 et seq., have power to re-

main a wet-nurse to the reorganized company. A bankruptcy court cannot obtain that power merely by inserting a provision reserving jurisdiction."

In this circuit the decisions are not so numerous, but they are in the same vein. In Re Peyton Realty Co., 3 Cir., 1945, 148 F. 2d 771, 773, District Judge Ganey, speaking for the Circuit Court of Appeals, said:

"This application is to change a status, to reopen a decree which by Section 207, Subsection h, (now section 628 of Title 11 U.S.C.A.) of the Bankruptcy Act, finality is given. It is just as important that there should be a place to end, as it is that there should be a place to begin litigation. There comes a time in all litigation when the order of the court is final, and we think legislative intent to this effect was given by this provision of the Act."

This question was also passed upon in this circuit, and in this district, by Judge Forman in the case of In re Camden Rail & Harbor Terminal Corporation, D.C., 1940, 35 F.Supp. 862, 867. There an argument ensued between the directors of a reorganized company after the plan had been consummated, but the final decree had not been entered. The manager-director of the company brought a petition for relief alleging bad faith in ousting him as manager of the corporation. Judge Forman said:

"Thus there is generated a controversy between a majority, three of the elected directors of the corporation, and a minority of one of such directors. The reservation of the jurisdiction in this court to entertain such a controversy was never intended either by the Bankruptcy Law or by the orders of the court."

So that we come to this question: How far may a court go in an ancillary proceeding after a final decree in a reorganization matter?

In Bakers Share Corporation v. London Terrace, Inc., supra [130 F.2d 159], Judge Hand, speaking for the Second Circuit Court of Appeals, said:

"We said that the phrase in subdivision h of § 77B, 'under and subject to the supervision and control of the judge,' did not invest the judge with a general protectorate over 'corporation organized * * * for the purpose of carrying out the plan.' Our theory was that such a reservation gives him jurisdiction only to decide whether the parties to the 'plan' carry out its provisions according to their true intent."

In the case at bar, while the petition allegedly seeks instructions, it hopes to restrain a certain certificate holder from voting its stock or certificates against the wishes of the director trustees.

Also in Reese v. Beacon Hotel Corporation, 2 Cir., 1945, 149 F.2d 610, 611, it was said:

"We have repeatedly held that reservation of jurisdiction beyond what is requisite to effectuate a plan of reorganization is beyond the power of the reorganization court."

Is it necessary therefor to take jurisdiction of the present controversy, if any exists, in order to protect the decree—to insure the performance of the plan—or to prevent violation thereof or departure therefrom? I think not.

The main argument advanced by petitioners is that the certificates expire next year and must be liquidated. Whether the certificate holders will demand liquidation at that time certainly cannot be passed upon now and can only be determined then, and by the certificate holders themselves. If it so happens then, the trustees-directors must meet that situation according to their best business judgment, bound by the trust agreement, signed by them and approved by this court.

I therefor conclude that this court is without jurisdiction to give the instructions prayed for in the petition, and the petition will be accordingly dismissed.