## In re AMBASSADOR HOTEL CORPORATION.

### No. 106.

Circuit Court of Appeals, Second Circuit.

Jan. 7, 1942.

Rosenberg, Goldmark & Colin, of New York City (Milton M. Bergerman, Herman Jervis, and Joseph Cohen, all of New York City, of counsel), for appellants.

Gerdes & Montgomery, of New York City (John Gerdes, W. Randolph Montgomery, and Irving T. Bush, all of New York City, of counsel), for appellees.

Before L. HAND, SWAN and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The facts are not in dispute. In proceedings instituted in 1934 for reorganization of Ambassador Hotel Corporation, debtor, the district court, by order dated August 1, 1935, confirmed a plan of reorganization pursuant to which the appellant, New York Ambassador, Inc., a new corporation organized under the laws of the

State of New York, took over the debtor's hotel in New York City, and all stock of the new corporation was delivered to the appellants Roosevelt, Vought and Merriman as voting trustees under a voting trust agreement dated as of January 2, 1936, and having a term of ten years thereafter. By order dated January 17, 1936, the court approved in form and content said voting trust agreement, and reserved jurisdiction to determine any matters pertaining to the reorganization proceedings or to the consummation of the plan. On June 8, 1936 the so-called Streit Act was enacted. This statute, now known as Article 4-A of the Real Property Law of the State of New York, Consol. Laws, c. 50, provides in section 130-c(2) that "no agreement appointing trustees to vote the stock of any corporation formed or used under a plan of reorganization of property shall be valid for a longer term than five years"—except upon certain conditions which have not been met in the case at bar. Believing this statute to be applicable to the aforesaid voting trust agreement the appellee, Jesse Sharp, who had purchased voting trust certificates issued thereunder, made demand on April 4, 1941 that there be delivered to him the shares of stock represented by his voting trust certificates. This demand being refused, he brought an action in the state court for a judgment declaring said voting trust agreement to have terminated on January 2, 1941, and for other appropriate relief. The defendants in that action (the present appellants) moved to dismiss the complaint for lack of jurisdiction of the subject matter on the ground that any relief granted in said action would constitute an interference with the decree of the bankruptcy court. While disposition of this motion was held in abeyance by the state court justice, Sharp made application to the district court in the reorganization proceedings for permission to continue his state court action; and the appellants, by cross application, moved to enjoin its prosecution. These applications resulted in the order appealed from. It denied the appellants' application for an injunction and granted Sharp's application for a declaration (1) that the district court lacks jurisdiction to determine or enforce the rights asserted by him in his state court action, and (2) that determination by the state court of the issues raised in said action will involve no interference with the district court's decree confirming the plan of reorganization.

The appellants rely upon the principle, exemplified in Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L. Ed. 629, and Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195, that a federal court of equity or bankruptcy has ancillary jurisdiction to enjoin state court litigation, notwithstanding the provisions of section 265 of the Judicial Code, 28 U.S.C.A. § 379, when necessary to secure or preserve the fruits and advantages of a judgment or decree rendered in the original cause. As stated in the Hunt case, this principle "is well settled" and we shall assume that it continues with vigor unimpaired by anything said in the recent pronouncement in Toucey v. New York Life Ins. Co., Nov. 17, 1941, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. ——. But even under the broadest conception of the power of a federal court to protect its own decrees, the appellants' contention must fail. No one has supposed that the power extends beyond enjoining state court proceedings which challenge the validity of rights decreed by the federal court. Sharp's action in the state court is not of that character; it does not attack any decision of the reorganization court. On the contrary, Sharp concedes that the voting trust certificates were validly issued pursuant to the confirmed plan of reorganization, and the issue he tenders for decision by the state court is: What is the legal effect of a subsequently enacted state statute upon the rights created by the federal decree in holders of voting trust certificates. Obviously, this question had not been passed upon by the reorganization court. Nor was it one over which the court could reserve jurisdiction to itself. When the court confirmed a plan of reorganization which set up a New York corporation with stock issued to voting trustees, it used a tool created under and subject to state laws. The future fate of the corporation was not within the control of the bankruptcy court, nor could that court reserve power to adjudicate controversies in which it might become involved—whether they should arise from a change in state law or from the corporation's own conduct, as for example, negligent injury to some guest of the hotel or failure to pay current bills. The appellants argue that a retroactive application of the statute under discussion will "modify" the plan of reorganization. We are not here concerned with how the statute is to be construed; but if the voting trust provisions shall be applied retroactively, it will

be merely a consequence of having incorporated under the laws of New York the company which was to carry on the debtor's reorganized business. In selecting such a corporation as an instrumentality of reorganization, the bankruptcy court sent it out into the state as fully subject to state law as though the court had had nothing to do with its creation. There is no more reason to exclude the state court from jurisdiction to determine the rights of holders of voting trust certificates under the New York statute on the ground that·its judgment may modify the plan, than there would be to enjoin a quo warranto proceeding against the corporation or even the prosecution of a large tort claim. A judgment of ouster in quo warranto or the entry of a very large money judgment in a personal injury action might equally disrupt execution of the plan of reorganization. But the bankruptcy court by confirming a plan of reorganization does not guarantee that the plan will be carried out regardless of what may befall the new corporation; nor does it have ancillary jurisdiction to control litigation respecting future events which may affect the new corporation's ability to carry out the plan. The order on appeal is affirmed.