**MATTSON et al. v. BIRKETT et al.**

No. 10625.

United States Court of Appeals Seventh Circuit.

Nov. 26, 1952.

Rehearing Denied Jan. 13, 1953.

Writ of Certiorari Denied March 9, 1953.

See 73 S.Ct. 651.

James W. Faulkner, Joliet, Ill., Jeremiah Buckley, Chicago, Ill., Thomas P. Faulkner, Joliet, Ill., for appellants.

Hubert L. Will, Peter B. Nelson, Thomas J. Boodell, Chicago, Ill., Nelson, Boodell & Will, Chicago, Ill., of counsel, for appellees.

Before KERNER, DUFFY and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

Plaintiffs appeal from an order of the District Court, which dismissed for want of jurisdiction their complaint to enjoin an action brought by the defendants in the Circuit Court of Will County, Illinois. The state action charged acts of waste, mismanagement of corporate affairs, and fraudulent conduct of the officers and directors and voting trustees of the James G. Heggie Manufacturing Company, an Illinois corporation.

It appears that on July 13, 1934, James G. Heggie and Sons, an Illinois corporation, instituted reorganization proceedings under Sections 77A and 77B of the Bankruptcy Act, 11 U.S.C.A. §§ 206, 207. An amended plan of reorganization was adopted and confirmed by a decree entered in the United States District Court for the Northern District of Illinois, Eastern Division, on March 14, 1939, by the terms of which the assets of the debtor corporation were transferred to a new corporation organized for that purpose, under the laws of Illinois, James G. Heggie Manufacturing Company. Three classes of stock in the new corporation were provided for: first preferred stock, consisting of some 10,500 shares of the stated par value of $25 per share; second preferred stock consisting of some 20,704 shares of the stated par value of $10 per share; and common stock consisting of some 21,000 shares of the stated par value of $1.00 per share.

A board of voting trustees was created consisting of Harry I. Mattson, Charles V. Wellner, William A. Kaffer, George A. Barr and Charles A. Russell, in whom was vested the legal title of all the stock in the new corporation for the benefit of both the preferred and common shareholders. The stock thus held by the trustees was represented by certificates of beneficial interest issued to the various creditors and shareholders of the debtor corporation.

The trust certificates evidencing the 10,500 shares of first preferred stock went to holders of the debtors' outstanding first mortgage gold bonds; the certificates evidencing the 20,704 and a fraction shares of second preferred stock went to the unsecured creditors of the debtor, and the trust certificates evidencing the common stock went to the shareholders in the debtor corporation, James G. Heggie & Sons.

The defendants-appellees are now the owners of 6,727, or more than 68% of 9,905 issued and outstanding voting trustee certificates with respect to first preferred shares in the James G. Heggie Manufacturing Company; they owned 19,867¾, approximately 96% of a total of some 20,704 issued and outstanding voting trustee certificates with respect to second preferred shares of said corporation; and they likewise owned 11,216, or more than 76% of a total of 14,600 issued and outstanding voting trustee certificates with respect to the common shares of such corporation.

The plaintiffs, Harry I. Mattson, Charles V. Wellner and William A. Kaffer, are the remaining acting trustees under the voting trust with respect to the shares of such corporation which was established, as we have already indicated, pursuant to the plan of reorganization. These reorganization proceedings were terminated and finally closed by a decree entered in the United States District Court for the Northern District of Illinois, Eastern Division, on September 27, 1940. That decree after extensive findings to the effect that the plan of reorganization had been "fully executed, carried out, accomplished and finally consummated," provided in paragraph 8 thereof:

"That this case entitled 'In the Matter of James G. Heggie & Sons, a corporation, Debtor, proceedings for reorganization under Sections 77A and 77B, Cause No. 56598', be and the same is hereby terminated and finally closed."

Upon the entry of this decree on September 27, 1940, the new corporation assumed the conduct of the business and has operated it for more than 12 years without any reports or reference to the bankruptcy court, so far as this record shows, and without the voting trustees being subject to the administration of that court in any manner whatsoever.

Two of the original voting trustees, James W. Barr and E. J. Stephen, resigned

as trustees and directors on January 8 and 10, 1952, respectively.

On January 28, 1952, the defendants-appellees filed suit in the Circuit Court of Will County, Illinois, which charged acts of waste and mismanagement of the corporate affairs, and fraudulent conduct by officers and directors and voting trustees of the James G. Heggie Manufacturing Company, all of which were alleged to have occurred after the entry of the decree of September 27, 1940.

On February 11, 1952, plaintiffs filed a suit in the United States District Court for the Northern District of Illinois, Eastern Division, seeking and moving for an injunction against further prosecution of the state court action. Defendants filed a motion to dismiss the complaint on the ground that the federal District Court was without jurisdiction of the subject matter.

On April 15, 1952, the District Court denied plaintiffs' motion for an injunction and dismissed the complaint, which is the order appealed from in these proceedings. The sole question presented here is: Did the United States District Court, under the facts and circumstances shown by this record, have jurisdiction to hear and determine the controversy over the affairs of the corporation organized to take over the debtor in a reorganization proceeding?

The plaintiffs-appellants earnestly contend that the bankruptcy court, by virtue of its inherent power to protect its decree, had jurisdiction over the reorganized corporation for the purpose of enforcing its decree and preventing interference with the reorganization plan and its consummation.

This court, in 1943, decided a case which seems to be in point, In re Leight & Co., 7 Cir., 139 F.2d 313, 314. In that case an involuntary petition in bankruptcy was filed against the Leight Company. Subsequently a plan of composition was confirmed by the District Court, under the terms of which the Company was to convey all its assets to three trustees who issued trust certificates to creditors of the company. Ten years later, a holder of trust certificates sued the trustees in the Superior Court of Cook County, Illinois, asking, among other relief, for an accounting, for dissolution of the trust, and for a receiver to liquidate the trust, which, it will be noted, is substantially the same relief sought in the case at bar.

The trustees in the Leight case filed a petition in the District Court seeking an injunction against the further prosecution of the Superior Court suit on the ground that it constituted "an interference with the plan of composition confirmed" by the bankruptcy court, and with "the judicial determination" of the bankruptcy court. They also asked that the bankruptcy court take jurisdiction of the proceedings and re-open the case. The District Court granted the injunction and ordered the state court proceedings to be transferred to the bankruptcy court, issuing a writ of certiorari directing the clerk of the Superior Court to transmit all files and records to the District Court.

In reversing this order this court said on page 316 of 139 F.2d:

"Even if it were true that the State court proceedings were a collateral attack upon some action of the bankruptcy court taken ten years before, it does not follow that the bankruptcy court had the right to resume jurisdiction and by injunction wrest from the State court its jurisdiction. We cannot assume that State courts will incorrectly determine the rights of the parties if left alone.

"The appellees contend that since the bankruptcy court first had jurisdiction, its jurisdiction is paramount. There is no question about the correctness of the doctrine argued by the appellees, but it is not applicable here. We do not have a question of prior claims to jurisdiction. The question is: Did jurisdiction end, and, if so, when? We cannot sanction a doctrine that would leave hanging in suspended animation the power of a bankruptcy court to resume jurisdiction over a composition agreement that had been confirmed and consummated for more than ten years. There must be an end to bankruptcy proceedings sometime. Neither the spirit of the act nor its contents au-

thorize the resumption of jurisdiction or the action taken by the District Court."

We faced a somewhat similar situation in the Argyle-Lake Shore Corporation reorganization, 7 Cir., 98 F.2d 372. In that case, the District Court had granted an injunction in 1938 restraining holders of voting trust certificates from soliciting other holders to vote for termination of the voting trust, which had been originally set up under a Section 77B reorganization plan in proceedings terminated and closed by a final decree entered in August, 1936. On appeal this court vacated the injunction and held that, whether or not the soliciting certificate holders had acted properly, the District Court had no jurisdiction under the original bankruptcy proceedings to enjoin their solicitation.

Again, In re Corona Radio & Television Corporation, 102 F.2d 959, this court pointed out that the jurisdiction of the bankruptcy court terminated upon the entry of the final decree closing the reorganization proceedings.

The Court of Appeals for the Second Circuit held In re Ambassador Hotel Corporation, 124 F.2d 435, that the District Court had no authority to enjoin state court proceedings to determine the application of a subsequently enacted New York statute limiting voting trusts to five years or less. The voting trustees, appointed pursuant to the plan of reorganization, sought to enjoin the state court action on the ground that "any relief granted in said action would constitute an interference with the decree of the Bankruptcy Court."

The Court of Appeals for the Second Circuit said in 124 F.2d at page 436:

"When the court confirmed a plan of reorganization which set up a New York corporation with stock issued to voting trustees, it used a tool created under and subject to state laws. The future fate of the corporation was not within the control of the bankruptcy court nor could that court reserve power to adjudicate controversies in which it might become involved—whether they should arise from a change in state law or from the corporation's own conduct, as for example, negligent injury to some guest of the hotel or failure to pay current bills. * * * In selecting such a corporation as an instrumentality of reorganization, the bankruptcy court sent it out into the state as fully subject to state law as though the court had had nothing to do with its creation. There is no more reason to exclude the state court from jurisdiction to determine the rights of holders of voting trust certificates under the New York statute on the ground that its judgment may modify the plan, than there would be to enjoin a *quo warranto* proceeding against the corporation or even the prosecution of a large tort claim. A judgment of ouster in *quo warranto* or the entry of a very large money judgment in a personal injury action might equally disrupt execution of the plan of reorganization. But the bankruptcy court by confirming a plan of reorganization does not guarantee that the plan will be carried out regardless of what may befall the new corporation; nor does it have ancillary jurisdiction to control litigation respecting future events which may affect the new corporation's ability to carry out the plan."

In connection with the case last stated, it is relevant to note that the general assembly of the State of Illinois by act passed on May 13, 1947, and effective July 1, 1947, amended its business corporation act to provide that voting trust agreements may not be created for a period to exceed ten years. Under authority of these decisions, we believe the ruling of the District Court in the case at bar was correct, and its order dismissing the complaint for want of jurisdiction is affirmed.