Ex parte York County Natural Gas Authority, Petitioner.

In re Outstanding Bond Series 1957, 1958, 1959, 1960 Payable Solely From Revenues.

YORK COUNTY NATURAL GAS AUTHORITY, Petitioner,

v.

CAROLINA PIPELINE COMPANY, Respondent.

No. B/2075.

United States District Court
D. South Carolina,
Rock Hill Division.

Heard March 9, 1967.

Decided March 31, 1967.

---

C. W. F. Spencer, Jr., of Spencer & Spencer, Rock Hill, S. C., D. W. Robinson, II, of Robinson, McFadden & Moore, Columbia, S. C., for York County Natural Gas Authority.

Charles W. Knowlton, of Boyd, Bruton, Knowlton & Tate, Columbia, S. C., L. Marion Gressette, of Gressette & Gressette, St. Matthews, S. C., and John M. Spratt, York, S. C., for Carolina Pipeline Co.

HEMPHILL, District Judge.

The York County Natural Gas Authority is in the implementation stage of an approved plan [1] for composition of its debts. Carolina Pipeline Co., the supplier of the county gas authority and a principal creditor, has filed suit against the county authority in the court of common pleas of South Carolina. The suit is an action for a declaration that the Authority does not hold exclusive sales rights in the authority area for sales in the area. They do not dispute that York does have exclusive sales rights for commercial and residential consumers. York filed its answer in the state court, and it now moves in this court to enjoin the action in the state court and to settle the dispute here. A temporary restraining order and preliminary injunction was ordered on January 26, 1967, and a rule to show cause why the injunction should not be issued was served on Carolina. Argument was had on March 9, 1967, and the matter before the court is Carolina's motion to dismiss the petition and to vacate the rule to show

1. Ex parte York County Natural Gas Authority, 238 F.Supp. 964 (D.S.C.1965) aff'd sub nom. Mozingo v. York County Natural Gas Authority, 352 F.2d 78 (4th Cir. 1965) cert. denied 383 U.S. 970, 86 S.Ct. 1277, 16 L.Ed.2d 310 (1966).

cause. The issue is whether the bankruptcy court has jurisdiction to issue the writ, and, secondly, if so, whether the writ should be issued.

In 1954 the gas authority was brought into being by an act of the state legislature in order to bring gas service to the York County area. At the time, Carolina Pipeline was to be utilized by the Authority for the construction of lines and mains and thereafter for a contract term to supply gas to the Authority. The Authority became aware that it could not meet its bond debts and its current expenses out of revenues and petitioned for the plan of composition, which was subsequently granted and approved. At that time bondholder Mozingo protested the plan of composition and submitted an alternative plan which involved leasing the operation to Carolina Pipeline. This alternative was rejected and the original plan was adopted and approved on appeal. The York County Authority and the Lancaster and Chester Countys' Natural Gas Authorities, which are similarly situated, are now implementing those approved plans for debt composition. Carolina Pipeline appeared in this composition proceeding, but, aside from supporting the Mozingo plan, it did not protest the composition plan. This brief, and perhaps over simplified, statement of the situation is offered here only as background to aid in understanding the present controversy. Carolina Pipeline has now brought an action in the South Carolina court for a declaration that they may make sales of gas to industrial customers in the Authority area, and that the Authority does not have the exclusive rights to make those sales.

Carolina Pipeline maintains that the question posed in the state action raises only questions of state law, that it is wholly unrelated to the matters involved in the plan of composition, and that therefore this court does not have jurisdiction nor cause for enjoining them from further prosecution of the declaratory judgment action.

The Authority moves for the injunction on the theory, among others, that the declaratory judgment action by Carolina involves a property right of the debtor, an asset, and that subject matter is within the jurisdiction of the court of bankruptcy.

In the opinion of the court there is jurisdiction in the district court and the injunction should be ordered.

Section 2283 of the Judicial Code, 28 U.S.C.A. section 2283, provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

Along with that limited power there is statutory authority for issuing injunctions in bankruptcy proceedings to protect the orders of the bankruptcy court and to enforce the Bankruptcy Act. Section 11(a) (15) of title 11 of the United States Code provides that the courts of bankruptcy are invested with such jurisdiction as will enable them to:

> Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title: Provided, however, That an injunction to restrain a court may be issued by the judge only.

See also the provisions of section 403(c) of title 11 of the Code.

In Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949), the Supreme Court stated the practical limits of the bankruptcy court's powers in a similar framework.

> We have held that a court of bankruptcy has exculsive and nondelegable control over the administration of an estate in its possession. Thompson v. Magnolia Petroleum Co., (1940) 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Isaacs v. Hobbs Tie & Timber Co., (1931) 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. There can be no question, however, that Congress did not

give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate. One exception is found in the express language of the statute. What it did give is exclusive jurisdiction of the debtor and its property wherever located. § 77, sub. a. The interest held by the debtor in South Western's lines was a leasehold estate. Such an estate is the debtor's 'property' within the meaning of the Act. Any controversy involving that estate would have been within the exclusive jurisdiction of the bankruptcy court. (footnotes omitted).

■ The dispute between these parties involves the right to make gas sales in the authority area. Since the Authority was formed, it submits, it has considered the right to make all gas sales an exclusive one: Carolina was to operate as a supplier of gas to the Authority only. What sales of gas Carolina made to industrial users was done with the assent of the Authority, and this continues even now during the pendency of the declaratory judgment action in the state court. That exclusive sales right was unquestionably a valuable property. See e.g., 37 C.J.S. Franchises § 8 (1943). It is being held by the Authority, and this is stated by Carolina in its complaint. The record strongly suggests that the Authority's possession of this right was an implicit premise on which the plan for composition was based. The revenues required to meet the obligations of the refinancing are, it is argued, dependent on the right to sell being an exclusive one. For this controversy the problem can be narrowed even further. The Authority's right to make all sales, it is argued, must be exclusive as against Carolina at the least extent. Carolina is the only party challenging the Authority's possession of the right; Carolina is the sole supplier of gas to the Authority and the Authority could not fairly meet price competition with their vendor should Carolina be allowed to make industrial sales; the past behavior of Carolina shows that Carolina recognized that the Authority had an exclusive sales right. The view the Authority has taken is that Carolina is now estopped to assert the right on behalf of itself, that they are guilty of laches, and that they are bound by contract not to serve the area as a distributor in any event.

During the original proceedings in this court for the debt composition, Carolina officers represented that they were not in competition with the Authority. If now Carolina may claim the right to make industrial sales, argues the Authority, there is nothing in principle to prevent them from asserting at a later date the right to make sales to any sector of the market. These arguments are highly persuasive that the matters in controversy could have grave effects on the refinancing plans. If Carolina should prevail on the merits of the case the entire plan of composition, which was so arduously developed and argued through to approval in the Court of Appeals, may have to be completely reformed.

■ These considerations satisfy the court that the matters in dispute here vitally affect the plan of bankruptcy itself. It is impossible under these circumstances to accept Carolina's theory that the declaratory judgment action they have initiated could be fairly and neatly completed without the possibility of throwing courts and judgments in conflict. The argument that the action is an entirely separable controversy from the debt composition proceedings is specious but when it is related to the past involvement of Carolina in the composition proceedings the distortion becomes readily apparent. This is not to say that the declaration could not be reached alone at any one time by either court, but that this court does have jurisdiction under the statute, and that the situation calls for the issuance of the writ of injunction.

The authorities cited by Carolina are distinguishable in that they do not directly involve assets in the estate of the debtor and the outcome of the dispute in those cases would not have invalidated the bankruptcy. The Court held in

Callaway v. Benton, 336 U.S. 132, 69 S.Ct. 435, 93 L.Ed. 553 (1949), that the state action did not affect the reorganization of the Central of Georgia railway. In that case, South Western Railroad, which was leasing lines to Central, was given the alternative of selling the lines to Central or having the lease cancelled. South Western offered to sell the lines if a majority of their shareholders would agree. The state action in that case was brought by the South Western shareholders for a declaration that the lines, as the entire assets of the company, could not be sold with less than a one-hundred percent affirmative vote by the shareholders. Under either alternative the reorganization could be carried through to completion.

In re Ambassador Hotel Corp., 124 F.2d 435 (2nd Cir. 1942), the other principal authority cited by Carolina, did not involve a dispute which would have vitiated the bankruptcy. In that proceeding the hotel was to be taken over in reorganization by a new corporation whose stock was to be held in a voting trust. A state statute was subsequently enacted to the effect that no voting trust was to last over five years. After five years a holder of voting trust certificates demanded his shares from the trustees. When the trustees refused, the certificate holder initiated an action in the state court to declare that the trust had been terminated. The state action was allowed to proceed on the grounds that the bankruptcy court had no jurisdiction to enforce the rights asserted by the certificate holder in the state action, and, secondly, that the state court action would not interfere with the district court's decree approving the reorganization plan. The court emphasized that the state action must challenge the validity of the decree in order to warrant an injunction. In the instant case that requirement is satisfied and the distinction is met.

The other cases cited by Carolina are of like import, and they are not controlling here.

While this determination is supported, in the opinion of the court, by the clear language of the statutes cited, it is of interest and of some support to note Poinsett Lumber & Mfg. Co. v. Drainage Dist. No. 9, 119 F.2d 270 (8th Cir. 1941). In a composition plan approved by the district court, an order was issued enjoining all creditors from enforcing by suit any claim whether equitable or legal. The Lumber Company moved for leave to sue in the state court for damages to land caused by water from a floodway which was built by the Drainage District. The Drainage District opposed the motion, admitted constructing the floodway, but denied they caused the damage, and raised the bar of laches, estoppel, res judicata, and the statute of limitations. The Lumber Company's motion to strike these objections on the merits was denied, and leave to sue in the state court was denied. It was held that the claim for damages was a claim included in the bankruptcy act as being one susceptible of proof and adjudication, and that the claimant was a creditor within the meaning of the Act. The decision was affirmed as being within the discretion of the district court.

■ As to the contention that an injunction would be prohibited by section 403(i) of title 11 of the United States Code, the answer should be that the section does not apply here where no state power, or agency, or action is limited or involved in this dispute between private parties. As between these parties Carolina cannot invoke the statute. See, Leco Properties, Inc. v. Crummer & Co., 128 F.2d 110 (5th Cir. 1942).

The doctrine of abstention was raised by brief as affording doctrinal support for allowing the state action to proceed. It is inapplicable to this controversy. Moreover, as to matters within the discretionary powers of the court, the gravity of the circumstances in this case would far outweigh the inducements to abstaining.

For the above reasons the court rules that the matter is within the jurisdiction of the court, and orders that the Carolina

Pipeline Company, having failed to show cause why it should not be enjoined from proceeding with the action in the South Carolina Court of Common Pleas, is hereby enjoined and stayed from further prosecution of that action.

And it is so ordered.