**In re BANKEAST CORPORATION,**
**Debtor.**

**Bankruptcy No. 89–1981.**

United States Bankruptcy Court,
D. New Hampshire.

Sept. 4, 1991.

Daniel W. Sklar, Manchester, N.H., debtor.

Dave Sears, Manchester, N.H., for debtor.

Van Oliver, Andrews & Kurth, Dallas, Tex., Timothy P. Smith, Manchester, N.H., for Phoenix Mut. Life Inc. Co., John Alden Life Inc. Co.

Albert A. Notini, Hale and Dorr, Manchester, N.H., for Creditors Committee.

Peter Nils Baylor, Nutter, McClennen & Fish, Boston, Mass., for Joseph and Pamela Trusdale.

Charles W. Morse Jr., Friedman & Atherton, Boston, Mass., for Walter DeWitt.

Frederic R. Dawe, pro se.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

The plan proponents in this case seek confirmation of their amended plan. At both the disclosure statement hearing on July 19, 1991 and confirmation hearing on August 30, 1991 this court expressed concern over the scope of the proposed retained jurisdiction of this court over post-confirmation litigation. The plan proponents are a creditors' group who filed a plan of reorganization following the termination of the debtor's exclusivity period. The plan creates a creditors' trust with various enforcement powers as to the reorganized debtor's assets in the event that the plan note in favor of the creditors' trust goes into default following confirmation of the plan. The plan also provides for various implementing actions and transfers of property involving the debtor and its various wholly owned subsidiaries, including an operating bank.

At the confirmation hearing the plan proponents presented a revised proposal regarding retained jurisdiction. However the revised proposal is still too broad, and for the reasons stated herein I am confirming the plan but with a narrower retained jurisdictional provision. For reference, the original proposed retention of jurisdiction provisions of the plan, the revised proposal, and the ultimate retention of jurisdiction provisions the Court has put in the confirmation order are attached to this Opinion as Annexes A, B and C respectively.

The seminal case on retention of jurisdiction generally is *North American Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir. 1944). In that case, the often quoted words of Judge Charles E. Clark are as follows:

> We have had occasion before to deplore the tendency of District Courts to keep reorganized concerns in tutelage * * * by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization * * * Since the purpose of reorganization clearly is to rehabilitate the business and start it off on a new and to-be-hoped-for more successful career, it should be the objective of courts to cast off as quickly as possible all leading strings which may limit and

hamper its activities and throw doubt upon its responsibility.

This case was preceded by another case in the Second Circuit that dealt with the more limited issue before this Court of retention of jurisdiction for post-confirmation litigation. In *In re Ambassador Hotel Corp.*, 124 F.2d 435 (2d Cir.1942) the court ruled that litigation over whether the voting trust certificates issued pursuant to the plan of reorganization were valid under state law five years after confirmation was not properly a matter for the reorganization court to handle. Judge Swan gave the following explanation which is the first guidepost for the decision I must make:

> The future fate of the corporation was not within the control of the bankruptcy court, nor could that court reserve power to adjudicate controversies in which it might become involved—whether they should arise from a change in state law or from the corporation's own conduct, as for example, negligent injury to some guest of the hotel or failure to pay current bills ... In selecting such a corporation as an instrumentality of reorganization, the bankruptcy court sent it out into the state as fully subject to state law as though the court had had nothing to do with its creation. There is no more reason to exclude the state court from jurisdiction to determine the rights of holders of voting trust certificate under the New York statute on the ground that its judgment may modify the plan, than there would be to enjoin a quo warranto proceeding against the corporation or even the prosecution of a large tort claim. A judgment of ouster in quo warranto or the entry of a very large money judgment in a personal injury action might equally disrupt execution of the plan of reorganization. But the bankruptcy court by confirming a plan of reorganization does not guarantee that the plan will be carried out regardless of what may befall the new corporation; nor does it have ancillary jurisdiction to control litigation respecting future

events which may affect the new corporation's ability to carry out the plan.

*Id.* at 436–37.

This decision was followed in *In re President Realty Co., Inc.*, 67 F.Supp. 390 (D.N.J.1946) where the court refused to take jurisdiction over of a controversy between stockholders and director-trustees of a reorganized company. This case is particularly instructive because the court stated that even if the confirmation order permitted the court to retain jurisdiction the court would have to decline when presented with the litigation.

Another Bankruptcy Act case commenting on the narrowness of post-confirmation litigation jurisdiction is *Claybrook Drilling Co. v. Divanco, Inc.*, 336 F.2d 697, 701 (10th Cir.1964). Although this issue was not directly implicated in the decision, the court did say:

> Thus a court may retain jurisdiction, after confirmation, to guarantee that the plan of reorganization is complied with, but it may not keep the corporation in "perpetual tutelage" by exercising control over all aspects of the corporate conduct or by assuming jurisdiction over controversies between the reorganized corporation and third parties.

A more recent Bankruptcy Act case establishing this principle is *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203 (Bankr. N.D.Ohio 1981). There the court held that affirmation of a collective bargaining agreement in the plan did not give the bankruptcy court jurisdiction over postconfirmation disputes arising from that agreement.

In short, the Act cases maintain that:

> The order of confirmation marked the commencement of the period when a debtor was weaned from dependence on the bankruptcy court's injunctive powers so as to stand on its own feet with respect to postconfirmation matters.

*In re Morgan & Morgan*, 24 B.R. 518, 521 (Bankr.S.D.N.Y.1982).

The primary statutory authority for this principle was Section 227 of the Act[1],

---

**1.** The court may direct the debtor, its trustees,

any mortgagees, indenture trustees, and other

which is substantively similar to 11 U.S.C. § 1142(b) [2] of the Bankruptcy Code. Thus, one would expect cases under the Code would be similar. My search of the case law has not uncovered any cases squarely confronting this issue, but some contain supporting language.

In *In re Roger J. Au & Son, Inc.*, 123 B.R. 31 (Bankr.N.D.Ohio 1990), for example, the Court held it did not have subject matter jurisdiction over an adversary proceeding between the debtor's principal and debtor's surety even though the plan provided that the Court would have jurisdiction over all pending adversary proceedings post-confirmation. Although this case does not directly confront the problem before me, it does contain language reminiscent of the Act cases. The Court stated:

> While the court may properly retain jurisdiction over postconfirmation matters under 11 U.S.C. § 1142(b) pursuant to a plan provision, it may not expand its jurisdiction merely by asserting it in a reorganization plan. *In re Tri–L Corp.*, 65 B.R. 774 (Bankr.D.Utah 1986); *In re Terracor*, 86 B.R. 671 (D.Utah 1988) (language of plan not controlling to retain jurisdiction beyond scope of Code).

Similarly, in *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 110 B.R. 173 (Bankr.E.D.Pa.1990), the court held the plan did not give the court jurisdiction over a post-confirmation dispute involving shareholders. Nevertheless, the court did note there are parameters on a court's jurisdiction. Judge Scholl stated:

> There is no doubt that the bankruptcy court's jurisdiction continues postconfirmation to "protect its confirmation decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." *Id.*, quoting *In re Dilbert's Quality Supermarkets, Inc.*,

368 F.2d 922, 924 (2d Cir.1966). *See also* 11 U.S.C. § 1142; and [*In re*] *Almarc, supra,* 94 B.R. [361] at 363–65 [Bankr. E.D.Pa.1988].

However, courts have attempted to balance the need to retain jurisdiction postconfirmation with the need to end the reorganization process at some point. For example in *In re J.T. Gerken Trucking, Inc.*, 10 B.R. 203, 204 (Bankr. N.D.Ohio 1981), the court concluded that "affirmation of the [collective bargaining] agreement in the plan does not confer jurisdiction upon the [bankruptcy] court over postconfirmation controversies.

\* \* \* \* \* \*

... the court in *Tri–L* cautions, *id.* at 778, that a reservation of jurisdiction in the plan or confirmation order "beyond what is necessary to effectuate the plan of reorganization is beyond the power of the bankruptcy court." *See also Claybrook Drilling Co. v. Divanco*, 336 F.2d 697, 700–01 (10th Cir.1964); *Reese v. Beacon Hotel Corp.*, 149 F.2d 610, 611 (2d Cir.1945); *In re Flatbush Ave.–Nevins St. Corp.*, 133 F.2d 760, 762 (2d Cir. 1943); and *Almarc*, 94 B.R. at 365–66. *Id.* at 180, 181.

With regard to the present reorganization case before the Court, the Court's determination as to an appropriate balancing of the interests of the plan proponents and nondebtor prospective litigants is embodied in the confirming order provisions set forth in Annex C of this Opinion, in accordance with the case law development on this point cited above. Basically, the Court will retain jurisdiction only to the point of substantial consummation of the plan, as that term is defined in § 1101(2) of the Code, and subject to the restrictions in § 1127(b)

---

necessary parties to execute and deliver or to join in the execution and delivery of such instruments as may be requisite to effect a retention or transfer of property dealt with by a plan which has been confirmed, and to perform such other acts, including the satisfaction of liens, as the court may deem necessary for the consummation of the plan.

**2.** The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution of delivery of any. instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

of the Code.[3] With regard to *specific* retained jurisdiction the confirming order lists only those matters which by definition may raise obstacles to substantial consummation of the plan of reorganization.[4] With regard to *conditional* retained jurisdiction the confirming order sets forth a procedure under which the plan proponents will be required to make specific the proposed additional retention of jurisdiction that they request, with notice, before this Court will unconditionally retain jurisdiction for such purposes.

The reason I have adopted this approach in this case, and will adhere to it in future cases, is that the reorganization court is constantly being put in the position of approving broad provisions for retention of jurisdiction at the plan confirmation stage when neither the plan nor the parties provide meaningful specifics as to the matters that may be involved. If the Court routinely retains such jurisdiction as provided in a plan, and in a submitted confirmation order, but later determines when a specific matter is brought before the Court that such matter is an inappropriate subject for retained jurisdiction under the applicable case law, the Court and the parties are presented with an arguable *fait accompli* in that since the plan provided for the retained jurisdiction, and the Court approved the plan without reservation in its confirming order, the Court ipso facto *has* subject matter jurisdiction. This circular process can occur without the Court really understanding at the time it retains jurisdiction the exact scope and ramifications of such retained jurisdiction on other parties.

By separate order entered this date the Court has confirmed the subject plan of reorganization with the retention of jurisdiction provisions as indicated above. This approach I believe will let the Court "know what it is doing" when it retains jurisdiction in complex reorganization cases where the plan or the parties have not defined sufficiently the specific areas of retained jurisdiction requested of the Court.

## ANNEX A (ORIGINAL PLAN)

### ARTICLE XIII

### RETENTION OF JURISDICTION

13.01. The Bankruptcy Court shall retain jurisdiction over these proceedings after Confirmation for the following specific purposes, without limitation:

(a) To hear and determine objections to Claims;

(b) To hear and determine causes of action by or against Debtor arising prior to the commencement of or during the pendency of this case over which this Bankruptcy Court would not have had jurisdiction absent this Creditors' Plan;

(c) To hear and determine any dispute arising under this Creditors' Plan, or requests to amend, modify, or correct this Creditors' Plan;

(d) To grant extensions of any deadlines set herein;

(e) To classify the Claims and Interests of any Creditor or Interest Holder and the reexamination of Claims and Interests which have been allowed for purposes of voting, and the determination of such objections as may be filed to Creditors' Claims or the holders of Interests;

(f) To determine all questions and disputes regarding title to the assets of Debtor or its Subsidiaries, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Effective Date, between Debtor and any other party, including, but not

---

**3.** A separate provision of the confirming order requires the debtor to file its application for entry of a final decree in this case on or before December 31, 1991. This Court deems a chapter 11 estate to be "fully administered" pursuant to Bankruptcy Rule 3022 at the point of substantial consummation as defined by § 1101(2) of the Bankruptcy Code.

**4.** Under § 1101(2) of the Code "substantial consummation" means: "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

limited to, any right of Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code;

(g) To adjudicate disputes arising under or regarding the implementation of this Creditors' Plan, the Creditors' Trust, the Disposition Agreement, the BEM Operating Agreement, or any similar agreement related to this Creditors' Plan;

(h) To hear and determine all causes of action by, against, or involving the Trustee of the Creditors' Trust, the relative rights of beneficiaries of the Creditors' Trust or the exercise by the Trustee of its right to foreclose the Creditors' Trust's security interests in the trust Collateral; and

(i) To enforce all discharge provisions under the Creditors' Plan.

## ANNEX B (REVISED PROPOSAL)

12. *Retention of Jurisdiction.* That, in accordance with and as modified herein, the provisions of Article XIII of the Creditors' Plan are effective insofar as the Court shall retain jurisdiction over this case and these proceedings after confirmation for the following specific purposes:

(a) To hear and determine objections to Claims;

(b) For a period of two (2) years after the Effective Date, to hear and determine claims or causes of action of the Debtor or against the Debtor which existed prior to the commencement of or arose during the pendency of this case over which this Bankruptcy Court would have jurisdiction under applicable law;

(c) To hear and determine any dispute arising under this Creditors' Plan, or requests to amend, modify, or correct this Creditors' Plan;

(d) To grant extensions of any deadlines set herein;

(e) To classify the Claims and Interests of any Creditor or Interest Holder and the re-examination of Claims and Interests which have been allowed for purposes of voting, and the determination of such objections as may be filed to Creditors' Claims or the holders of Interests;

(f) For a period of one (1) year after the Effective Date, to determine all questions and disputes regarding title to the assets of Debtor or its Subsidiaries, and the determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Effective Date, between Debtor and any other party, including, but not limited to, any right of Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code if filed within one (1) year after the Effective Date;

(g) To adjudicate disputes arising under or regarding the implementation of this Creditors' Plan, the Creditors' Trust, the Disposition Agreement, the BEM Operating Agreement, or any similar agreement related to this Creditors' Plan. In the event the Debtor, its affiliates or their appropriate officers refuse to execute and deliver the above-said Plan Implementing Documents as provided in Section 6.04 of the Creditors' Plan on the Confirmation Date, then the Debtor or its affiliates shall file with this Court and serve upon the Plan Proponents and their counsel a motion to resolve any such disputes, describing in such motion each such dispute in detail and the factual reasons and legal authorities in support of their position by Wednesday, September 4, 1991 at 4:00 p.m. and a hearing to consider said motion will be held before this Court on September ——, 1991 at —— p.m. (provided, however, that no issues which could have been raised in connection with confirmation of the Creditors' Plan shall be raised as part of their objections to execution of the Plan Implementing Documents);

(h) To hear and determine all causes of action by, against, or involving the Trustee of the Creditors' Trust, the relative rights of beneficiaries of the Creditors' Trust or the exercise by the

Trustee of its right to foreclose the Creditors' Trust's security interests in the Trust Collateral; and

(i) To enforce all discharge provisions under the Creditors' Plan.

ANNEX C (CONFIRMING ORDER)

12. *Retention of Jurisdiction.* The extremely broad provisions for retained jurisdiction set forth in the Creditors' Plan are hereby limited and modified, for the reasons set forth in the Memorandum Opinion entered separately this date, as hereinafter provided. The Court shall retain jurisdiction over this case and these proceedings after confirmation for the following specific purposes:

(a) To hear and determine objections to Claims;

(b) To hear and determine any dispute arising under this Creditors' Plan, its implementation and execution of any necessary documents thereunder, or requests to amend, modify, or correct this Creditors' Plan, provided such matters are brought before the Court prior to the point of substantial consummation as that term is defined by § 1101(2) of the Bankruptcy Code, and subject further to the restriction provided by § 1127(b) of the Bankruptcy Code.

(c) To grant extensions of any deadlines set herein;

(d) To enforce all discharge provisions under the Creditors' Plan.

In addition to the foregoing retention of jurisdiction for specific purposes the Court will also conditionally reserve jurisdiction with regard to any right of the debtor to recover assets pursuant to the provisions of Title 11 of the United States Code provided that: (1) The plan proponents make application on notice not later than 60 days following the effective date of the plan of the request for retention of additional jurisdiction to cover any specific matter involved; and (2) such additional retention of jurisdiction comports with the balancing analysis set forth in the Memorandum

Opinion as to the appropriateness of the suggested additional retention of jurisdiction.