CUDAHY, Circuit Judge.
Ulyssus George Wade and Joyce Wade owned U.G. Wade Trucking, Inc. In 1985, they filed for Chapter 7 bankruptcy protection, 11 U.S.C. § 701 et seq., for both their personal and corporate holdings. They appeal from an order entered in those proceedings.
I.
The Wades’ bankruptcy litigation has been long and rife with allegations of wrongdoing: the Wades have sued two judges, two trustees and their own attorney. Those lawsuits have spawned more than a dozen appeals to this court from both core and noncore proceedings. Although originally assigned to the bankruptcy court, the present case was later transferred to the United States District Court. On January 4 and 5, 1990, the district court held hearings with respect, inter alia, to whether the bankruptcy estate was ready to be closed. The debtors raised four objections, although only one actually related to the closing. That objection involved whether the court would make a finding stating that the trustee had “faithfully discharged” his duties and whether such a finding would collaterally estop future litigation against both the original and the successor trustee. The district court assured counsel that it would make no factual findings with respect to the trustees’ performance. The debtors had no further objection to the closing. The parties agreed that the estate had been fully administered.
At the hearings on January 4 and 5, the debtors stated that the notice of a “request to close” had never been mailed, and that the question of the request to close had never been resolved at a hearing. In their appellate brief, however, the debtors state that the request to close and their objections to it had been discussed on January 4, 1990. The debtor-appellants argue, on the other hand, that at no time did the district judge ask them whether they were ready to proceed to close and whether they had any objections to the request to close.
The trustee’s signed request to close was filed on November 6, 1989. The name of Mark Garringer, the debtors’ attorney, appears on the distribution list. The district court docket reflects that notice to submit applications for fees and notice of the trustee’s application to abandon, of the application for approval of agreed entry on distribution of proceeds and of the hearing set for January 4, 1990 was sent. A review of the transcripts of the January 4 hearing reveals the following:
The Court: Good morning. We have before us several matters this morning. We have the final application to abandon and request to close,.... I would like to deal with all of these matters this morning. Does that meet with everybody’s approval?
* * 5}! * * *
Garringer: My question goes to the application for fees.
The Court: Those are a part of the request to close, are they not?
Trustee: That’s correct, Your Honor, and that was noticed for today by this court.
The Court: Right. We will deal with that. Now, before we begin on those, there were some matters filed just yesterday regarding subpoenas, and I have an entry to give you on miscellaneous motions....
I thought we would begin right with the application to abandon and the request *405 to close and let the Trustee begin and then hear your objections and proceed down the list.
* * * * * *
So, let’s proceed with your application to abandon and your request to close.
The hearing consumed the remainder of the day and part of the following day. At the end of the hearing, Garringer discussed closing. Garringer stated that if the court did not use the “faithfully discharged” language with respect to the trustees’ duties, then “[i]f tomorrow the court enters an order ... saying the estate is fully administered and this case is closed, we have no problem with that.” Shortly after, he stated that, “we would have no objection to an order closing this case.”
On January 17, 1990, the district court issued an order resolving a number of key issues: 1) the distribution of proceeds from the account receivable held by the estate; 2) the payment of the statutory trustee fee to the original trustee, Edward Hopper, II; 3) the statutory trustee fee to the successor trustee, Neil Shook; 4) the payment of attorneys fees and expenses to a law firm; 5) the denial of fees of the debtors’ attorney; and 6) the motions for sanctions against the debtors. The order unequivocally stated that the bankruptcy estate was closed.
The Wades were then tardy in filing their notice of appeal. The case was returned to the district court to determine if the late filing was excusable. The district court found no excuse for the late filing, and this court dismissed the appeal for lack of jurisdiction. During this period, we issued an order conveying our displeasure with the manner in which the Wades had conducted the litigation. Sometime following that order, Garringer was dropped as attorney, leaving the debtors to proceed pro se. Their continuing attempts to appeal were unsuccessful. The Wades filed a motion to reopen within three months of the January 17 order. This motion was later withdrawn. On April 4, 1990, Trustee Shook filed a motion submitting his supplemental final report and asking to be discharged from his bond. In March 1991, the Wades filed a second motion to reopen because they entered into a dispute with the Internal Revenue Service. As is apparent from their requests to reopen and attempt to appeal, the Wades considered the order of January 17 to be final. On May 30, 1991, the district court entered an order denying the Wades’ motion to reopen, and granting the trustee’s motion to be released from bond and discharged of his duties. The question of sanctions was deferred to the close of other, noncore, proceedings. The Wades, through the attorney they had “fired” and apparently “rehired”, appealed the order of May 30 within the prescribed time period. This appeal is now before us.
In their brief, the Wades do not challenge the substance of the two matters covered in the May order from which they are appealing. Instead, the Wades challenge the resolution of the issues in the core proceedings, alleging judicial error and errors in administration of the estate. The trustee argues that the Wades cannot attack the resolution of the core bankruptcy proceedings but only the decisions contained in the May order. For this reason, the trustee does not respond to the appellants’ substantive arguments. Not until their reply brief do the Wades contend that the bankruptcy was not finally closed until the trustee was discharged by the May order, and that therefore their appeal of the May order brings up for review the core proceedings.
To support their argument that the bankruptcy was not closed and that therefore the January order was not final, the Wades rely on a letter that the trustee mailed to them after the hearing. In a letter dated January 16, 1990, the trustee asked for the Wades’ signatures on some documents, and commented about trying quickly to close the estate. The letter said: “As you have indicated, you wish this estate to be closed as quickly as possible, and the filing of these returns is a necessary step towards that end.” The Wades interpret this statement as evidence that the January hearings did not close the estate. The letter, however, was written one day prior to the January order that pronounced the estate *406 closed. The appellants also contend that because the supplemental final report had not been approved by the district court, the estate was not finally closed on January 17. If the estate was still open after January 17, the Wades argue, the core bankruptcy issues are brought up for appeal by the filing of a notice of appeal from the May order.
II.
This court considers three sorts of bankruptcy appeals: those arising from final orders, from interlocutory orders and from collateral orders. In re Klein, 940 F.2d 1075, 1077 (7th Cir.1991). “[C]ertain bankruptcy orders may be deemed final before the estate is entirely closed.” In re Official Comm. of Unsecured Creditors, 943 F.2d 752, 755 (7th Cir.1991). That species of finality is linked to our decision in this case.
A final order in a bankruptcy case, is one that resolves all contested issues on the merits and leaves only the distribution of the estate assets to be completed. In re Wagner, 808 F.2d 542, 544-45 (7th Cir.1986). This is a less stringent interpretation of finality than that employed in most civil lawsuits and is often applied to adversarial proceedings which are related to the core bankruptcy proceedings. See, e.g., In re Kilgus, 811 F.2d 1112, 1116 (7th Cir.1987). Several types of bankruptcy orders are final and appealable, for example, orders allowing or denying claims; orders denying relief from a stay; decisions involving property ownership; exemptions; sanctions; appointments of trustees; judicial sales orders; and confirmation of a bankruptcy plan. See e.g., Ginsberg, Bankruptcy: Text, Statutes, Rules, § 1.04(b) (2nd Ed.1991 Supp.).
Our duty is to determine whether the January order was final and appealable. If the January order was appealable, the Wades filed their notice of appeal too late and are barred from challenging the core bankruptcy issues. If the January order was not final and appealable, we did not have jurisdiction over the first appeal, and the Wades may presumably raise the core bankruptcy issues at this juncture.
The timing of a bankruptcy’s closing has been called a “nebulous” concept. In Re Korvettes, Inc., 67 B.R. 730, 732 (S.D.N.Y.1986). We shall try to clarify the issue at least in part. Section 350(a) of the bankruptcy code states that “After an estate is fully administered and the court has discharged the trustee, the court shall close the case.” 11 U.S.C. § 350(a). A bankruptcy rule uses nearly the same language in restating this proposition. Fed.R.Bankruptcy P. 5009. The language of Section 350(a) is conjunctive. The estate must be fully administered and the trustee must be discharged. This language indicates that without formally discharging the trustee, the bankrupt estate may not be legally closed. The statute continues, stating that the court shall close the case at the time of formal discharge. The statute does not, however, indicate whether the court may close the case at an earlier time. No language forecloses this opportunity, but to determine if this is permissible, we shall consider the policies affecting the closing of a bankruptcy estate and the trustee’s duties.
A trustee is charged with the duty of closing the estate as expeditiously as may be compatible with the best interests of the parties. 11 U.S.C. § 704(1). A trustee must “fully administer” creditors’ claims against the bankrupt estate. The trustee controls the assets of the estate, which will be applied to satisfy these claims to the extent assets exist. The remaining property of the debtor which is of no value or is exempt from administration is “abandoned”. 11 U.S.C. § 554. “Full administration” has not been conclusively defined.[2] *407 A Chapter 7 estate may be “fully administered” before some ministerial tasks are completed. In the judicial context, “ministerial” refers to purely mechanical tasks that presumably do not affect issues on appeal or result in new appeals. In re Excello Press, Inc., 967 F.2d 1109 (7th Cir.1992) (cases remanded to a bankruptcy judge for computational purposes only); In re Fox, 762 F.2d 54, 55 (7th Cir.1985). These same principles apply to ministerial tasks required of bankruptcy trustees. In In re J.W. Knapp Co., 930 F.2d 386, 388 (4th Cir.1991), the Fourth Circuit made a distinction between the legal functions and the ministerial responsibilities of bankruptcy trustees. A ministerial task is one that does not rely on legal understanding or does not involve complex legal issues. Id.
Chapter 7 cases come to an end in a final report indicating the distribution of proceeds from liquidated assets. The trustee’s final report in Chapter 7 cases in the Southern District of Indiana, required by local rule B-2015(c), must contain 12 pieces of information. Local Bankruptcy Rule S.D.Ind. B-2023.[3] Among these are the total receipts and disbursements of the estate made in continuing the business of the debtor and a statement by the trustee that these disbursements were properly made and reasonable in amount. Local Bankruptcy Rule S.D.Ind. B-2023(a). The supplemental final report required in the Southern District of Indiana records the receipts and disbursements which were approved as included in the final report as well as the final bank statement of the trustee’s account. Local Bankruptcy Rule S.D.Ind. B-2023(d). The Bankruptcy Code provides that the trustee’s duties under the law end with the filing of the final report and the filing of the final account of the *408 administration of the estate. 11 U.S.C. § 704(9). At a minimum, full administration encompasses the filing of the final report. Even if the final account of the administration can be extracted from various papers filed with the court, this final account is not enough without the trustee’s final report.
Hopper, the first trustee here, filed a “final report” that accounted for the assets that were in his possession or were disposed of while he was trustee. This “final report” did not contain the statement required by S.D. Indiana Bank.R. 2303(5) to the effect that all assets had been reduced to cash and the estate was ready to be closed. In effect, this “final report” was final only with respect to the role Hopper played in the bankruptcy estate. In reality the document was not a “final”, but rather an “interim”, report, a position illuminated by Hopper in a later filing. Thus, Shook, the successor trustee, needed to file a final report prior to the closing. We find no docket entry that a final report was filed, nor do we find the report itself in the record. Instead, we find the successor trustee’s accounting of the former trustee’s administration, as well as an application to abandon certain property, an application for compensation and reimbursement and the request to close. The aggregate of these documents does not provide the information required pursuant to local bankruptcy rules to comprise the final report. Nor does the required information appear in the form stipulated by Rule B-2023. Because no final report was filed, therefore, the trustee’s duties had not been fully carried out. In conjunction with the fact that the trustee had not been discharged and thereby relieved of any unfulfilled duties, it appears that the powers of the trustee had not been fully exercised. Thus, the district court’s January 17 order closing the estate was entered somewhat prematurely — before all requisite duties had been performed.
The point is, however, that, whether or not the order was entered prematurely, it was entered and it did purport to be final. In the absence of more materi-al errors than appear here, the order of a district court that is final in form and is, to all appearance, proper, will be taken at face value and will be regarded as final for jurisdictional purposes. In this case, not only did the court intend the order to be final, and label it as such, but the parties regarded it as final — at least until one of them developed an interest in having a later date to appeal. The hearing of January 4 and 5 resolved all the disputes arising from the core proceedings and the parties agreed to close the bankruptcy. As a result, the order of January 17 closing the estate was issued. At the time that order was issued, the only duty of the trustee that remained was the filing of some ministerial paperwork. Because Hopper filed a “final” report, there remained little for Shook to do. Compiling the documents necessary for the second final report did not, in these circumstances, require any special legal understanding. We certainly do not intend to diminish the importance of a trustee’s final report and the district court erred in entering the order of January 17 without such a report; but that is only to say that the order was entered somewhat prematurely. Its finality and appealability were not affected. Were we to hold that such an order was not appeal-able because of some relatively minor deficiency in the trustee’s performance — at least in circumstances no more egregious than those before us — we would deprive appellate jurisdiction of all certainty and make the time for appeal subject to guess work about the adequacy and completeness of the reporting.
Our view of the jurisdictional problem is consistent with the Wades’ earlier view. The appellants proceeded as if the estate were closed, acknowledged as much and filed an appeal to this court. In addition, they made motions twice asking the district court to reopen the estate. The trustee and other interested parties joined in the appellate process, as well as responded to the motion to reopen. These proceedings took considerable time, both of the parties and of the courts. More than one set of briefs was submitted, numerous pleadings were filed and eleven orders were issued *409 by this court. Without considering the merits, we dismissed the appeal as untimely. Obviously, all parties were proceeding as if the district court decision was final. Cf. In re Xonics, Inc., 813 F.2d 127,129-30 (7th Cir.1987) (issues were resolved in the district court order never to be revisited and the failure to appeal could bar closing the estate).
This case differs from Xonics because the order here purported to close the estate, while in Xonics the debated order merely addressed a lesser issue arising from the core proceeding. Nonetheless, the Xonics reasoning applies here. The January 17 order resolved the issues of the core proceedings and the parties and the court treated it as final and appealable. If the order was entered in error, it is error that can be corrected on appeal; it is not error that deprives the appellate court of jurisdiction.
One of the goals of bankruptcy litigation is to achieve expedition in the proceedings. See 2 Collier on Bankruptcy ¶ 3350.01 at p. 363-1; 11 U.S.C. § 704(1). This goal is certainly advanced by taking formally ap-pealable orders at face value and not giving inappropriate weight to nonjurisdictional objections advanced for the purpose of furnishing litigants with a second bite of the apple. In addition, the propriety of bankruptcy appeals should not be affected by later steps to complete distribution.
With respect to the denial of the Wades’ motion in the district court to reopen the bankruptcy case, the same arguments were made as apply to the January 17 order. The decision denying reopening was within the sound discretion of the district court. In re Shondel, 950 F.2d 1301, 1304 (7th Cir.1991); 11 U.S.C. § 350(b). We note that there were no assets requiring administration, the debtor is not entitled to relief and no “other cause” has been shown. Although the order closing the bankruptcy was premature, that error was corrected in subsequent proceedings. All that remained for the trustee were ministerial tasks. Therefore, the Wades cannot succeed in their attempts to reopen the bankruptcy case. Nor can they raise as objections to the order of May 30, 1991, underlying matters which they attempt to call up on this appeal.
III.
For the foregoing reasons, the district court decision is Affirmed.

. In Chapter 11 reorganizations, a court has defined "fully administered” as indicating the point when the estate reaches substantial consummation as defined by section 1101(2) of the bankruptcy code. Section 1101(2) states that substantial consummation is reached when, inter alia, distribution has commenced, but not necessarily been completed. At that point, a Chapter 11 final decree may be issued. In re BankEast Corp., 132 B.R. 665 (Bankr., D.N.H. *407 1991). One court, when addressing a Chapter 11 situation, listed events to be considered in determining if full administration has occurred. Some of these events may be analogous to chapter 7 proceedings. They are 1) when the order confirming the plan has become final, 2) when deposits have been distributed, 3) when payments under the plan have commenced and 4) when all motions, contested matters, and adversary proceedings have been resolved. When these events occur, substantial consummation has been reached, and the final decree may issue even though the plan has not been carried out in every detail. In re Mold Makers, Inc., 124 B.R. 766, 768-69 (Bankr.N.D.Ill.1990). Alternatively, other cases have inverted the analysis by defining substantial consummation in terms of full administration. The meaning of full administration as used in section 350(a) is not clear. See In re Hunt Trust Estate, 92 B.R. 172, 181 (Bankr.N.D.Tx.1988); In re Placid Oil Co., 92 B.R. 183, 200 (Bankr.N.D.Tx.1988). The concepts of full administration and substantial consummation seem to be, however, distinct rather than mutually defining. See In re Tennessee Wheel & Rubber Co., 64 B.R. 721, 727 n. 6 (Bankr.M.D.Tenn.1986).

. Local rule B-2023 states the following:
(a) Final Report. The Chapter 7 trustee’s final report shall be a verified pleading, and shall contain the following information in the following order:
(1) date of trustee’s qualification and amount of trustee’s bond;
(2) statement of the services performed;
(3) total receipts and disbursements;
(4) total disbursements made in continuing the business of the debtor;
(5) a statement that all assets have been reduced to cash and that the estate is ready to be closed;
(6) a statement detailing the items of property listed in the debtor’s schedules, including accounts receivable and choses in action, and accounting for same;
(7) a statement that the trustee has examined the amount paid prior to the filing of the petition to an attorney by the debtor for services rendered or to be rendered in connection with the bankruptcy, setting forth the amount of such payment and whether the fee is reasonable, and if unreasonable, the proceedings taken thereon; '
(8) a statement of the compensation sought by the trustee’s attorneys and accountants, together with such comments or recommendations as the trustee deems appropriate;
(9) a statement that all disbursements made by the trustee were reasonable in amount and properly made;
(10) a statement that all filed claims have been examined and should be allowed for the amounts therein claimed or in such other amounts as fixed by order;
(11) the compensation requested by the trustee and the amount of any previous allowance;
(12) the following documents: a current bank statement; Schedule A listing cash received, dates of receipt, and total of receipts; Schedule B listing disbursements, date and amount of each disbursement, purpose of each disbursement, and total of disbursements; and Schedule C, a statement of the assets which came into the trustee's possession and the disposition thereof.